## WESTHEIMER *v.* PEACOCK.

Although the language of our statute of frauds is somewhat different from that of the fourth section of 29 Charles II, yet it is so much like it in terms, that the English and American authorities upon the construction of the English statute, are entitled to the same consideration as upon questions at common law.

Although the English statute provides that *no action shall be brought,* whereby to charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person, unless the agreement upon which such action shall be brought, or some memorandum, or note thereof, shall be in writing, &c., while ours provides that *no evidence of any such contract* is competent, unless in writing, the effect is the same in both cases.

The meaning is, that such actions cannot be maintained, under either statute, unless the contract is in writing, as therein required, save in the exceptions provided for by our statute.

Our statute, by so far innovating upon the original statute of frauds, as to al-

low the party making the alleged promise, to be called on to the witness stand, and his oral testimony, so obtained, to be evidence of the contract, never contemplated relaxing the rule, requiring an agreement to answer for the debt of another, to be in writing.

J. P. executed his promissory note for a certain sum, payable in ninety days, and about the time of its maturity, stopped payment. Before, and after, the maturity of the note, the payees called upon the defendant, the father of J. P., and informed him that they were about to sue thereon, and attach the property of J. P. The defendant insisted that this should not be done, and said that he was getting his son's property into his hands, and that he would pay the note. The debt could have been made by attachment, but on account of this promise, suit was not brought. The defendant was asked to indorse the note, but declined, for the reason that it could then be sold to a banker, and he be sued upon it immediately. After this promise of defendant, the note was assigned to the plaintiff. J. P. was never released from his liability on the note; the promise of defendant was not evidenced by any writing signed by him, or by any person for him. The defendant being sued on this verbal promise, answered, denied the promise, or its validity, and pleaded the statute of frauds; and there being no evidence to show, that defendant did get his son's property into his hands, and the alleged promise being proved by one of the payees of the note, and not by the defendant himself, the defendant asked the court to instruct the jury as follows: "1. That unless the jury believe that J. P. was wholly released on said note, they must find for defendant. 2. That no evidence is competent to prove the alleged promise, other than that of defendant's handwriting, or that of his lawfully authorized agent, or the testimony of defendant himself, upon the witness stand," which instructions the court refused to give.

*Held,* 1. That the promise was nothing more than one of those cases where A. becomes the surety for the debt of B., in consideration that the creditor will forbear to sue, or to prosecute a suit already commenced.

2. That the agreement to forbear, might be a good consideration to support the promise, if in writing, but not a consideration of such a character as to make a new and original transaction between the parties.

3. That it was error to refuse the instructions.

*Appeal from the Dubuque District Court.*

IN November, 1852, James Peacock (the son of the defendant), gave his note, payable to Heidelback & Co., for $630.60, due in ninety days; and about the time of its maturity, stopped payment. Before and after the maturity of said note, one of the payees called upon the defendant, and informed him that they were about to sue thereon, and to attach the property of James. The defendant insisted

that this should not be done, and said that he was getting his son's property into his hands, and that he would pay the note. The debt could have been made by attachment, but on account of the promise of the defendant, suit was not brought. Defendant was asked to indorse the note, but declined, for the reason that it could then be sold to a banker, and he be sued upon it, immediately. After this time, the note was assigned to plaintiff. James Peacock has never been released from his liability on the note. The promise of defendant was not evidenced by any writing, signed by him, or by any person for him; nor was there anything to show that defendant did get his son's property into his hands. This suit is brought upon this verbal promise. The defendant, in his answer, denies the undertaking as charged, also its validity, and pleads the statute of frauds. The promise was proved by one of the original payees, and not by the defendant. On the trial, the defendant asked the court to charge the jury as follows:

1. That unless they believe that James Peacock was wholly released on said note, they must find for defendant.

2. That no evidence is competent to prove the alleged promise, other than that of George Peacock's handwriting, or that of his lawfully authorized agent; or the testimony of George Peacock himself, on the witness stand.

Which instructions were refused, to which defendant excepted. Verdict and judgment for plaintiff, and defendant appeals.

*Smith, McKinlay & Poor*, for the appellant, relied upon the following authorities: *Miller* v. *Gaston*, 2 Hill, 188; *Taylor* v. *Binney*, 7 Mass. 479; 1 Parsons on Cont. 493; *True* v. *Fuller*, 2 Pick. 140; *McDoal* v. *Yeomans*, 8 Watts, 361; *Springer* v. *Hutchinson*, 19 Maine, 359; Birge on Surety, 20; *Tomlinson* v. *Gell*, 6 Adolph. & Ellis, 564; 33 Eng. Com. Law, 148; *Emerick* v. *Sanders*, 1 Wis. 100; 1 Cromp. & Jer. Exch. 374; *Muggs* v. *Ames*, 15 Eng. Com. Law, 47; *Birkmyr* v. *Dannell*, 1 Smith's Lead. Cases, 269; Swan's Treat. 318; *Anderson* v. *Davis*, 9 Vermont, 136;

*Chadwick* v. *Brown*, Morris, 492; *Rix* v. *Admrs. of Troup*, 9 Vermont, 233.

*Burt & Barker*, for the appellee, cited no authorities.

WRIGHT, C. J.—We think it was error to refuse these instructions. The language of our statute of frauds is somewhat different from that of the fourth section of 29 Car. II, and yet so much like it in terms, that the English and American authorities upon its construction, are entitled to the same consideration as upon questions at common law. That statute provides that no action shall be brought, whereby to charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person, thereunto by him lawfully authorized. Our statute provides, that except when otherwise specially provided, *no evidence* of any such contract is competent unless it is in writing, and signed by the party to be charged, or by his lawfully authorized agent. Sections 2409 and 2410. And while the next sections make certain exceptions, yet they are not such as apply to this case, for the reason that the contract is denied in the pleadings, nor was the defendant called as a witness, in order to establish the oral contract. As applied to this case, then, the only difference is, that the English statute provides "that no action shall be brought," while ours provides that "no evidence of any such contract is competent," but the effect is the same in both cases. The meaning, as we apprehend, is, that such actions cannot be maintained under either, unless the contract is in writing as therein required, save in the cases provided for by our statute. It is true that in one sense, our statute is but a regulation relating to the proof of contracts, and yet, unless a case shall be brought within one of the exceptions provided for, it cannot be maintained, any more than if the legislature had used the language of the

English statute. The same evil was known to exist, and it was designed to apply the same remedy. The inquiry is the same, then, whether we are asked to determine as to the competency of the evidence, or the right of the plaintiff to bring and maintain his action. The action cannot be maintained without competent testimony, and our statute provides what alone shall be competent in such cases as that now before us.

It will be observed, from the statement of the case, that James Peacock was not discharged from his liability on the note; nor, in the opinion of the court below, was it necessary that he should be so discharged, in order to make the defendant liable in this action. And we suppose, that the refusal to give the instructions, was on the ground, that this was an original undertaking on the part of defendant, founded upon a new, independent, and sufficient consideration, and as such was valid. The second instruction could only have been refused, as we conclude, for this reason, for, as a legal proposition, it is clearly correct. And here it is well to bear in mind, that defendant's liability, if there is any, arises upon a promise made or given, subsequent to the time of the creation of the original debt. And, in such cases, while the subsisting liability is the ground of the promise, but such collateral undertaking is not the inducement to the creation of the debt, there must be some further consideration shown, having an immediate respect to such liability; for the consideration for the original debt, will not attach to the subsequent promise. *Leonard* v. *Vredenburg*, 8 Johns. 29. But when thus made subsequent, if the consideration is new, and distinct in its nature; or (in the words of KENT, C. J., in the above case), "arises out of some new and original consideration of benefit or harm, moving between the newly contracting parties," the promise is not within the statute. This case must be sustained under the class of cases last named, or must fail.

We think this is nothing more than one of those cases, where A. becomes the surety for the debt of B., in consideration that the creditor will forbear to sue, or to prosecute a

.suit already commenced. The agreement to forbear might be a good consideration to support the promise, if in writing, but not a consideration of such a character, as to make a new and original transaction between the parties. There is nothing to show, that the defendant, when he made the promise, had in view or secured a benefit, which accrued immediately to himself. On the contrary, his object was to obtain forbearance or benefit to his son. If for his own benefit, the promise would not be within the statute; if for the debtor, it would. And this distinction, we think important, and one that is clearly recognized by the authorities. The case of *Nelson* v. *Boynton*, 3 Metc. 396, is very similar to the one before us, and clearly recognizes the rule above laid down. There the creditor commenced his action against the defendant's father, on two promissory notes, and attached certain real estate as security. Before the action was entered in court, the defendant promised the plaintiff, that if he would discontinue the suit, he would pay him the amount of the notes, and the suit was accordingly discontinued. The notes were not given up, nor was the father discharged. It was held, that the promise of the son was within the statute of frauds; a promise to pay the debt of the father; and, therefore, though made on a good consideration, was not valid, without a promise or memorandum of the agreement in writing; and, in *Jackson* v. *Raynor*, 12 Johns. 291, the son of the defendant had given his promissory note, which was held by plaintiff. The son was sued, and his property about to be taken upon a warrant, when the father told the officer not to serve the writ, "for he would pay the debt, if an honest one," and thereupon the plaintiff was satisfied, and withdrew his suit. Soon afterward, the father saw the officer, and requested him "to tell the plaintiff to give himself no further trouble about it, for he would pay the debt, as he had taken his son's property, and meant to pay his honest debts." The father was sued on this promise, and relied, in his defence, on the statute of frauds. The defence was sustained, upon the ground, that the promise was to pay the debt of another, which debt still subsisted,

and as such, the promise should have been in writing. See, also, *Simpson* v. *Potter*, 4 Johns. 422; *Corthing* v. *Aubert*, 2 East, 325; *Chandler* v. *Davidson*, 6 Blackf. 367. In this last case, BLACKFORD, J., says: "There are, no doubt, cases in which a verbal promise to pay the amount of another's debt, is an original promise, and not within the statute of frauds. They are cases, however, in which a new consideration passes at the time of the promise, between the new contracting parties, of such a character, that it would support a promise to the plaintiff, for the payment of the same sum of money, without reference to any debt from another;" and such is the case, he says, of *Williams* v. *Leper*, 3 Burr. 1886; and we may add, that an examination of that case, will show that the plaintiff had a lien upon property, which was discharged for the benefit, and at the request, of the party promising, and, under such circumstances, the promise was properly held valid. The case, also, of *Chadwick* v. *Brown*, Morris, 492, though not very fully reported, would appear to be conclusive upon this question.

We conclude, therefore, that these instructions were improperly refused, and that the case must be reversed. Our statute, by so far innovating upon the original statute of frauds, as to allow the party making the alleged promise, to be called on to the witness stand, and his oral testimony, so obtained, to be evidence of the contract, never contemplated relaxing the rule, requiring an agreement to answer for the debt of another, to be in writing. The object of the statute originally was, to avoid subjecting third persons to liabilities for the debts of others, upon the testimony of witnesses, who might be mistaken as to the language used, or willfully misstate its purport. Where the party to be charged, himself is the witness by whom the contract is to be established, however, it seems but just that he should not be allowed to complain, if he is charged on his own testimony. Nor should the other party, with such a privilege given, recover upon a weaker case, than before such innovation.

Judgment reversed.