STERNBURG *v.* CALLANAN AND INGHAM.

1. EVIDENCE: ADMISSION OF COPY. A copy of a paper is inadmissible in evidence when the proper foundation for secondary evidence has not been laid by showing that the original has been lost, and that it is a true copy of the original. It is not sufficient to show that it is a true copy of a copy.

2. USURY. Where a principal deposited money with an agent to be loaned on terms which would make it net to the principal interest at a usurious rate, it was held, in action by the principal to recover a balance remaining in his hands, that the agent was not a party or privy to a usurious contract, and could not interpose the plea of usury.

3. LIABILITY OF INCOMING PARTNER. To render an incoming partner liable on an old debt of the firm of which he has become a member, there must be a novation of the debt, or an agreement sanctioned by all the copartners, for a legal consideration, to discharge the old firm from their liability to the creditor, and to make the debt an obligation of the newly constituted firm.

4. SAME: CONTRACT BY A FIRM. One member of a firm cannot bind the copartnership by an agreement to pay the individual debts of another copartner without the consent of the other members of the firm, especially when the articles of copartnership prohibit such agreements or contracts.

5. STATUTE OF FRAUDS. Parol evidence other than that of the party sought to be charged, is inadmissible to show a promise to answer for the debt of another, when the original debtor remains liable, or there is no novation of the debt.

*Appeal from Warren District Court.*

WEDNESDAY, DECEMBER 10.

FOR several years prior to the 1st day of June, 1857, Andrew J. Stevens had been doing business in the city of Des Moines, as a land agent and banker. Lambert Sternburg, the father of plaintiff, and assignor of the account sued on, employed Stevens as his agent to locate land warrants, make time entries, and to enter lands in his name, &c., &c.

It was agreed that the capital invested in warrants and money, deposited for the purposes above stated by Sternburg, should be loaned or invested so as to yield 40 per cent, that Stevens should have five per cent for his trouble. It appears from the account kept by Stevens that up to the date aforesaid, Sternburg had deposited with Stevens about $15,000; that he had returned to him $17,000 in cash, 3,300 acres of land, the title to which was absolute, and a large amount, about the title which there was some doubt; that under the contract there was yet due on the books of Stevens $1,500. The business house of Stevens was known by the name of A. J. Stevens & Co. It is averred by the plaintiff, and not contradicted, that the "& Co." was a mere fiction, and that there was no other person in said firm but A. J. Stevens.

Upon the first day of June, 1857, Callanan and Ingham formed a copartnership with A. J. Stevens, in the banking and exchange business. Articles of copartnership were formed and entered into, specifying the character of business to be transacted, the rights, duties and liabilities of each member of said firm, the amount of capital to be invested, the place of business, &c., and fixing the name and style of the firm as "A. J. Stevens & Co."

It appears that Stevens had been doing both a land agency and a banking business, and that there were certain depositors to whom Stevens was indebted when the new partnership was formed. The accounts of certain depositors were transferred to the new books, and the liability of Stevens to them assumed by the new firm. The amount thus assumed being charged to the "individual" account of Stevens. It was soon ascertained that Stevens was insolvent. The firm having assumed a large amount of his old indebtedness and Stevens being indebted to both Callanan and Ingham, individually, as security therefor, he

transferred to them a large amount of real estate and the firm was dissolved, Stevens retiring therefrom.

It is claimed by the plaintiff that Callanan and Ingham as incoming partners both expressly and impliedly assumed to pay the balance due Lambert Sternburg immediately after the new partnership was formed, and it is upon this assumption that this suit is founded.

Stevens in his own behalf denies that he is indebted to plaintiff; claims that the plaintiff has received all the money he was entitled to; that the contract was usurious, contrary to the policy of the law, and for this reason plaintiff should not recover.

Callanan and Ingham each deny that they ever assumed to pay the Sternburg account, and that by their conduct there was ever any implied promise to pay the same; and claim that if Ingham, as the acting partner of the firm ever expressly promised to pay said debt, such promise was not binding upon the firm, as there was no consideration therefor, no promise in writing to that effect, and that it was not proper and legitimate business of the firm to assume to pay the private debts of the partners.

Upon these issues there was a trial and judgment for plaintiff.

The admission of certain evidence and the giving certain instructions, the refusal of others, and the overruling the motion for a new trial are the errors assigned.

*James Callanan, Jr.*, for the appellant.

I. The court erred in admitting in evidence the copy of the petition in the case of *Stevens* v. *Callanan & Ingham*. Code of 1851, § 2437.

II. Callanan & Ingham were not liable as incoming partners. Story, Part., § 152; 19 N. Y. R., 37. If incoming partners they could be made liable only upon their and each of their agreement to become so. *Beale* v. *Mouls*, 10

Adolph. & Ell. N. R., 976; *McGuin* v. *O'Halloran*, Lalor's Sup. to Hill and Denio, 86; Chit. Contr., 253; 4 Term R., 720; 7 Id., 720; *Hart* v. *Tomlinson*, 2 Verm., 103.

III. There cannot be an implied promise where there is an express or special one. 15 Pick., 159; 10 Adolph. & Ellis, 976; 7 John., 36; 5 Iowa, 383; *Cartledge* v. *West*, 2 Denio, 378; *Crawford* v. *Morrell*, 8 John., 255; *Thayer* v. *Roch*, 13 Wend., 53; *Carter* v. *Becket*, 7 Term R., 204.

IV. The alleged verbal promise is void by the statute of frauds. *Westheimer* v. *Peacock*, 2 Iowa, 528; *Eddy* v. *Roberts*, 17 Ill., 505; *Lee* v. *Malony*, 9 Iowa, 348; *Watts* v. *Kirby*, 15 Ill., 200; Story, Part., § 146; *Kingsley* v. *Balcome*, 4 Barb., 131; *Anderson* v. *Davis*, 9 Verm., 136; *Mease* v. *Wagner*, 1 McCord, 395; *Simpson* v. *Patten*, 4 John., 422.

V. The alleged agreement is void because Ingham had no power or authority to bind the firm. It was not within the scope of the copartnership business. Story, Part., § 75; Bouv. Law Dict., Part., 276; *White* v *Langdon*, 30 Verm., 599; 3 Kent, 43; *Eastman* v. *Cooper*, 15 Pick., 276; *Poindexter* v. *Waddy*, 6 Munf., 418; 22 Penn., 21; *Wilson* v. *Lewis*, 2 Scott's N. R., 115; Chitty on Contracts, 233; *Merceiu* v. *Andrus & Mark*, 10 Wend., 461; Colyer Part., § 520; *Wilson* v. *Williams*, 14 Wend., 158; *Kirby* v. *Ingersoll*, Har. Ch., 172; *King* v. *Taylor*, 22 Penn., 21; *Wolcott* v. *Canfield et al.*, 3 Conn., 198; *Rogers* v. *Batchelor*, 12 Pet., 230; *Hickman* v. *Reinking*, 6 Blackf., 388; *Dob* v. *Halsey*, 16 John., 34; *Mayberry* v. *Baruiton*, 2 Har., 24.

*C. C. Cole* for Stevens.

*Brown & Sibley*, for the appellee, reviewed the authorities cited by the appellant, and discussed the evidence presented in the record.

BALDWIN, C. J.—The pleadings and evidence plainly show that Stevens was acting merely as the agent of Stern-

burg in loaning his money, or rather, in making time entries for him with land warrants. There was no contract between Sternburg and Stevens to the effect that Stevens should borrow money and pay a usurious rate of interest therefor. The parties to whom the warrants were loaned, or for whom the land was entered, may have been parties to a usurious contract, and might have interposed this plea; but the defendant Stevens, who acted only as an agent, who had neither borrowed money of plaintiff, paid nor agreed to pay any use therefor, cannot maintain this defense.

To constitute the offense of usury, there must be an agreement that he who has the use of the money shall pay to the owner of it more than lawful interest; and none but privies or parties can take any advantage of this defense.

The Court admitted in evidence upon the trial a copy of a copy of a petition filed in the District Court of Polk County, in a cause wherein A. J. Stevens was plaintiff, and Callanan, Ingham, and others were defendants. This petition is certified to by the clerk as a true copy of a copy on file in his office, and that the original was lost. To the admission of this copy in evidence the defendants objected, and its admission is assigned as error. There are several objections made to the introduction of this petition, either of which was sufficient to have excluded it from the jury. It is not certified that the copy is a true copy of the original. It is not made to appear beyond question that the original was lost, or that it could not be obtained. It does not appear that there was any notice served upon Callanan and Ingham of its pendency. It was not an action commenced until such service was made. If it was introduced for the purpose of showing an admission of a valid indebtedness upon the part of Stevens to Sternburg, this was improper, as it was not the best evidence of that fact, as Stevens proposed to admit the amount as claimed to

be due from him to plaintiff.` It was an improper way of bringing before the jury the copies of exhibits attached to said petition.

The appellants objected to the introduction of other testimony tending to show an express promise upon the part of Ingham, acting for the firm, to pay to Sternburg the debt of Stevens, as such promise was not binding under the Statute of Frauds, unless made in writing.

The same questions are presented under the assignments of error relative to the ruling of the Court in giving and in refusing to give certain instructions to the jury; and also the question is thus presented as to the liability of the defendants as incoming partners.

Did the Court properly instruct the jury as to the defendants' liability as incoming partners? The law governing the liability of incoming partners appears to be clearly and definitely settled. In Story on Partnership, § 152, the author says: "From what has already been said it is apparent that an incoming partner (that is, a new partner coming into an existing firm) will not be liable in respect to debts contracted by the firm previously to his entering it. But although this is the clearly established doctrine, yet it does not follow that an incoming partner may not become liable for such debts, by expressly assuming them, upon a proper consideration, or otherwise dealing with the creditor in such a manner as to create an implied obligation and duty to pay the same in common with the old firm. The presumption, of law, indeed, is against any such liability, but the presumption, like many others, may be removed by due and satisfactory proofs of the contrary intention and agreement. Thus, for example, if the balance due from the old firm be with the consent of the creditor and *all of the new firm* carried to the debit of the new firm, the latter deriving a benefit therefrom as a credit or deposit, it is very clear that the new firm will be bound therefor as their

own debt.   Indeed it may be generally stated, that in all cases of this nature the primary consideration is, not so much to ascertain between what parties the original contract was actually made, as it is to ascertain whether there has subsequently been, with the consent of all parties, any change or extinguishment of that contract.   When it is established by satisfactory evidence, that upon the accession of a new partner a new promise has been made by the entire new firm, in respect of the old debt, with consent of the old partners, as well as of the creditors, it will amount to a novation of the debt, and the new partner will be chargeable."

Mr. Collyer says: "There are unquestionably circumstances that produce exceptions to the general rule.   It has been held that payment of interest of the old debts, length of standing in the firm, knowledge of the state of the books accompanied with the benefit derived from contracts on which they are founded, will be evidence from which the jury may infer the assent of the incoming partner to debts contracted by the firm."

But he says: "it seems clear that in all cases of this nature the primary consideration for the jury is, between what parties was the contract actually made?   *   *   *
If no new promise be proved; if, for instance, the incoming partner was a dormant partner, and joined in no act to ratify the contract, he will not be concluded by it, for neither was he a party to it originally, nor does the mere act of joining the partnership amount to a ratification." See Collyer on Part., §§ 520, 525.

Recognizing the principles as thus stated to be correct, let us consider how far they are to control in this case.   It is not claimed by the plaintiff that the alleged express promise was made by any one except Ingham.   That Ingham ever made this promise to Sternburg is strongly denied, and the evidence introduced tending to prove that it

was made, is very weak and unsatisfactory; and strong evidence was introduced by defendants to show that no such promise was made. Conceding, however, that it was made as is alleged, does this bind the defendants? Under the rule as above stated the new promise must be made by the entire new firm, in respect to the old debt, before it is binding. The promise of Ingham alone is not the promise of the entire new firm, nor binding unless he was expressly authorized by the other members of the firm to do so, or unless such promise was ratified by them. The articles of co-partnership expressly forbid the payment by the firm of the individual debts of its members. Nor was the assumption of the old debt of A. J. Stevens a transaction within the scope of the partnership business.

Again, there must be a novation of the debt before the new firm is liable. Before this can take place there must be a new promise made by the entire new firm, and upon a valid consideration therefor. The character of the old debt must be changed or absorbed by the new promise. This new promise must not only be complete, so that the remedy thereon is effectual, but the old debt must be released, or merged in the new one. It is not claimed that Callanan ever assented to the novation of this old debt by any express promise, or by any act ratifying the promise of Ingham. The promise was then not made by the entire new firm, nor does it appear that the plaintiff has ever relinquished his claim against the old firm; on the contrary we think it is made to appear almost beyond a doubt, that long after this assumption is claimed to have been made, that Sternburg recognized his claim as a valid subsisting one against Stevens alone. From the fact, therefore, that the existing promise relied upon was not made by the entire new firm, that the promise was not ratified by Callanan, that it was not a transaction within the scope of the partnership business; that the old debt was never released or

discharged, we are inclined to the opinion that the defendants were not liable upon the express promise made by Ingham, nor liable as incoming partners.

But it is claimed that this promise was made by Ingham in behalf of the firm, and that the firm received a valuable consideration therefor.

To this we think that it is well replied by defendants that this promise not being in writing was void under the statute of frauds, and upon this ground the plaintiff could not recover. A promise to pay the debt of another, he still remaining liable, is a collateral promise and void. *Anderson* v. *Davis*, 9 Verm., 136. A promise to pay the debt of another, for which, *after* the promise the other still remains liable, is within the statute of frauds and must be in writing or it is void. *Eddy* v. *Roberts*, 17 Ill., 506 ; see also *Westheimer* v. *Peacock*, 2 Iowa, 528. Under our Statute no evidence of a contract is admissible wherein one person promises to answer for the debt of another unless such contract be in writing and signed by the party charged or his agent. But nothing in this provision shall prevent the party against whom the unwritten contract is sought to be enforced from being called as a witness by the opposite party, nor his oral testimony from being evidence.

The plaintiff did not offer to bring this case within the exception by the introduction of the opposite party. If, therefore, Ingham was authorized to act for the new firm, the contract sought to be enforced was within the Statute of Frauds, and the evidence tending to prove the parol promise should have been excluded.

The Court very properly instructed the jury that it was not competent for a member of a copartnership to do any act outside of the business of the firm, and that if they believed from the evidence that Ingham made an agreement to pay the creditors of the old firm, contracted prior to June 1, 1857, without the knowledge and consent of

Callanan, then they should find for the defendant, Callanan, unless he afterwards ratified the act of Ingham. We have examined this whole record of evidence carefully, and we are constrained to say, that we cannot find anything that would justify a jury in arriving at the conclusion that Callanan had any knowledge of, or consented to the agreement of Ingham to pay this debt, or that he ever ratified such an agreement. The verdict is directly against the law and evidence on this point.

The first instruction asked by plaintiff, and given by the Court, we think misstates the law. It is as follows: The parol promise of the new firm, who are the defendants, made on a legal consideration to pay a debt of the old firm, is a binding promise on the defendants, even though the old firm was not discharged and is still separately liable.

This is directly in conflict with the rule as above given from both Story and Collyer. There must be a novation of the debt before the new firm is liable. In order to make it a new debt, the old one must no longer exist. Sternburg cannot rely upon the promise of the new firm, and if he fails upon that, fall back upon the old firm of A. J. Stevens & Co.

The Court erred in refusing the fourth instruction asked by defendants. "That if the jury believe from the evidence that the debt of Lambert Sternburg against A. J. Stevens, or A. J. Stevens & Co., as it existed before the first of June, 1857, still existed as a claim against said Stevens after that date, and after the formation of the new firm, and if they find that there was no valid agreement between Stevens and Callanan & Ingham, that the new firm should assume and pay the debt to Sternburg, then any verbal or unwritten promise from one of the partners made to Sternburg after that time, to pay the debt of Stevens to Sternburg is void, and parol evidence thereof cannot be

regarded by the jury, unless it is the evidence of the defendants sought to be charged." For the reasons above stated we think this instruction should have been given.

We deem it unnecessary to take up all the points made by the counsel for appellant, (some sixty in number, with as many subdivisions,) as there are but two or three controlling questions in the case.

We think the view of the Court below in reference to the liability of the firm upon the alleged express promise of Ingham to pay to Sternburg the old debt of A. J. Stevens & Co., was wrong. This promise, we hold, did not obligate the firm, as it was a transaction not within the scope of the partnership business, and if he had authority to act for the firm, it was a promise to pay the debt of another, not in writing, and void under the statute of frauds. If there was an implied promise to pay this debt by the new firm, this implication arises from this action after the new firm was organized. To bind the new firm it must be made apparent that there was a novation of the old debt.

We do not undertake to say that the Court erred in refusing the motion for a new trial, upon the ground that the verdict was against the weight of evidence. The rule adopted by the Appellate Courts upon this character of an assignment is well known to the bar. Did this cause turn upon this question alone, we should have hesitated before we could have affirmed the judgment. There are some circumstances tending to show an assumption of this debt by the new firm, but these are so strongly rebutted, by the fact that this account was never credited to Sternburg upon the new books, as other accounts were, that were assumed, and Stevens was never charged therewith by the fact that Sternburg after this assumption as claimed to have been made, checked upon Callanan and Ingham for the balance due him, and it was paid, by the testimony of Ingham and

Pritchard, who were familiar with the whole transactions, and who most positively deny that any such assumption was made. Besides these facts, the evidence of Lambert Sternburg, upon which the plaintiff mostly relies to establish such a promise, it must be conceded, does not stand very fair before the Court.

The jury must have found for the plaintiff upon the express promise of Ingham. From the view we have taken of the case, we do not believe that this was binding upon the entire firm.

Reversed.