ROBERT LEYTHAM, Appellant, v. SEARS McHENRY et al., Appellees.

No. 39447.

January 21, 1930.

*Robertson & Robertson,* for appellant.

*Sims & Page,* for Sears McHenry, appellee.

*L. W. Powers,* for M. L. Runge, receiver, appellee.

Evans, J.—The case here presented was before us in one of its phases in *Leytham v. Hassett,* 200 Iowa 199. In that case the plaintiff purported to sue this defendant on the note of Hassett. At the close of the evidence therein, the district court directed a verdict for the defendant, and such order was affirmed here.

In the present case, plaintiff has predicated his cause of action upon the alleged oral agreement of the defendant that he would pay said note. The general theory of his case may be stated briefly: That the agreement of April 14, 1921, was one of settlement or compromise; that the compromise constituted a complete and independent agreement; that in said compromise the defendant agreed to pay the note on March 1, 1922, in consideration of an extension to that date; that a mutual settlement or compromise is sufficient consideration for such promise; that in fact the defendant McHenry had an interest in such indebtedness, such as to constitute him a debtor.

694

The defendant pleaded the statute of frauds, and also a general denial.

It appears that Patrick Hassett was a dealer in real estate in Crawford County in 1920, and had become the owner of a large acreage, and had thereby become greatly involved financially. He was a customer of the First National Bank of Denison, of which this defendant was president. In all his dealings with the First National Bank, he usually dealt personally with the president. As a subsidiary to the bank was the firm of McHenry & Seemann, which carried on an investment business in connection with the bank. This defendant owned a one-fourth interest in such firm. The bank and this firm held the obligations of Hassett to the amount of approximately $60,000. They held collateral security, consisting mainly of second mortgages, covering 4,500 acres of land. Hassett had purchased the plaintiff's farm in June, 1920, and had made partial payments thereon, and was, under his contract, to make a payment of $20,000 on March 1, 1921. The defendant had nothing to do with the purchase, and had, as appears from this record, no interest therein. On March 1, 1921, Hassett was wholly unable to meet his payment, because he could not borrow the same from his bank. On April 14, 1921, the plaintiff, with his attorney, came to Denison, to press for payment. He threatened to commence foreclosure. He also claimed that McHenry had promised to make the payment. This was stoutly denied by McHenry in all their conversation. Tom Hassett, brother of Patrick, interested himself in his brother's affairs, Patrick not then being present, and asked the plaintiff to accept a payment of $10,000 and to extend the time for the balance to March 1, 1922. This became the agreement which is now sued on. The bank, or its subsidiary, through McHenry, agreed to loan Hassett $10,000 upon certain collateral, which he delivered. Hassett executed his note to McHenry & Seemann for the $10,000, and this note was transferred to the First National Bank. It has never been collected. Hassett became, or was, insolvent, and the bank and McHenry followed in his wake. In no other sense than herein indicated did McHenry or his firm or his bank have any interest in Hassett's contract with the plaintiff.

We have, therefore, before us a clear case of an alleged

agreement to answer for the debt of another, which, under the statute, must be proved, if at all, by writing, signed by the person to be charged. The jury rendered a verdict for the defendant. The plaintiff, as appellant, has presented and argued many errors as grounds of reversal. The more prominent of these relate to the instructions of the court. We may assume that some of these are well taken, and that the appellant is entitled to a reversal and a new trial, unless it be true, as the appellee contends, that the appellant has no case at all, and that the trial court should have directed a verdict in the first instance.

The apparent theory of the appellant is that he has escaped the statute of frauds by predicating his action upon the alleged oral compromise of April 14, 1921. The idea advanced is that  a compromise constitutes a complete agreement in and of itself, and is necessarily enforcible as to both parties thereto. If this theory be tenable, then the plaintiff has discovered a method of wholly avoiding the statute of frauds. The underlying purpose of the statute of frauds is to remove the temptation to perjury on the part of the plaintiff, and to protect innocent parties against the consequences of such perjury; therefore the requirement of a writing, signed by the party to be charged. If the plaintiff can prove the liability of the defendant by proving an oral agreement of compromise, then he has succeeded in charging him with the debt of another without producing any written evidence whatever. We can conceive of no legal reason why an oral agreement of compromise should be any more available or effective than any other oral agreement to avoid the statute of frauds. If it be proposed to avoid the statute by proof of an agreement of compromise, then such agreement of compromise should include some writing, signed by the party to be charged. Appellant relies for authority upon *First Nat. Bank v. Browne*, 199 Iowa 981. Such citation has no application to the controlling point herein. Pursuant to the compromise in that case, the party to be charged *signed a promissory note*. The suit was upon his own promissory note. His attempted defense was want of consideration. The signing of the promissory note took the case entirely out of the statute of frauds. So if, in the case at bar,

McHenry had signed a note for this debt, a very different question would be before us.

It is also contended for the appellant that the agreement for forbearance and the extension of time upon the note operated as an independent contract, and furnished an independent  consideration for the defendant's alleged oral promise. We see no room for that contention. McHenry had no interest in that forbearance except the incidental one which a bank official might have in his customer and in his debtor. ·The forbearance operated only in favor of the debtor. It could operate in favor of McHenry only if he had already become such. If his actual oral promise was to pay the debt on March 1, 1922, then there was no forbearance as to him. The due date of payment would be a part of the contract. The extension would operate to the benefit of Hassett. This would not be available to the plaintiff, as against McHenry. The new or independent consideration requisite in such a case must be one *moving as a benefit to the promisor*. Mere resulting disadvantage to the promisee is not sufficient for such purpose, as will be later indicated herein.

In *Schaafs v. Wentz*, 100 Iowa 708, the question at this point received a detailed consideration. In that case, a father approached the creditor of his deceased son and asked and obtained forbearance. The promisee thereafter sued the father upon his oral promise to pay the debt. We quote the following discussion from the opinion in that case:

"But he contends that the promise in this case was based upon an independent consideration, and was made to subserve defendant's purposes, and was therefore an original one. The testimony relied upon to establish the promise and the claimed consideration therefor was to the effect that defendant went to plaintiff sometime in October, 1893, and asked about the amount that was due and owing him from his (defendant's) son-in-law; that plaintiff gave him the amount, and defendant then said: 'Don't make me any bother, and don't make any trouble. I will pay it very soon, but you will have to give me some time.' Plaintiff responded by saying that he would take his word for it, and let it go as it was until later. There is also evidence to the effect that defendant said that he had some interest in the

property of the deceased, and that he wanted to see how he would come out with it. There is also evidence to the effect that plaintiff turned his note and account over to an attorney for collection, and that this attorney presented them to defendant for collection, whereupon defendant said that he had all of the property belonging to Neisus in his possession; that he was going to make a sale of it, and would then pay the plaintiff's claim; that he had claims against the estate, and, if no costs were made, he would come out better. It also appears that Wentz then said to the attorney that he had told plaintiff not to make any costs or expenses, and he would pay him. It is clear that, so far, the alleged promise of the defendant was to answer for the debt of his son-in-law. * * * The promise made by the defendant was clearly collateral, and not an original one; for it was not supported by any consideration moving to him.''

In *Sternburg v. Callahan & Ingham*, 14 Iowa 251, 259, we said:

''A promise to pay the debt of another, he still remaining liable, is a collateral promise, and void. * * * A promise to pay the debt of another for which, *after* the promise, the other still remains liable, is within the statute of frauds, and must be in writing, or it is void. * * * Under our statute, no evidence of a contract is admissible wherein one person promises to answer for the debt of another unless such contract be in writing and signed by the party charged, or his agent.''

In *Westheimer v. Peacock*, 2 Iowa 528, 532, we said:

''We think this is nothing more than one of those cases where A becomes the surety for the debt of B, in consideration that the creditor will forbear to sue, or to prosecute a suit already commenced. The agreement to forbear might be a good consideration to support the promise if in writing, but not a consideration of such a character as to make a new and original transaction between the parties.''

On the question of forbearance as a sufficient consideration for an independent contract, the authorities are collated in 20 Cyc. 192, and the rule deducible therefrom is summarized as follows:

"It is well settled that a promise to pay the debt of another in consideration merely of forbearance by the creditor to sue the original debtor or to make an attachment or levy an execution, without any new or original consideration moving to the promisor and beneficial to him, is within the statute of frauds, and must be in writing; * * * [page 194]. But a parol promise to pay the debt of another merely in consideration of forbearance by the creditor to enforce a lien against the original debtor will not be enforced if such forbearance *does not inure to the benefit of the promisor,* and the original debtor remains liable * * *."

In short, whereas, in an ordinary contract, a *consideration* is deemed such if it operates to the disadvantage of the promisee, even if it does not operate to the advantage of the promisor, such is not the proper definition of *consideration,* as applied to an independent contract or obligation, which will avoid the statute of frauds. In such a case, the consideration must move to the promisor. In the case at bar, there could be no advantage to McHenry in promising to pay the debt on March 1, 1922, unless he was already bound to pay it on April 14, 1921. In such a case, the forbearance operated wholly in favor of the debtor. We think the case is clearly within the statute of frauds, and that it would be a mere trifling with the statute and with the spirit thereof to hold that it had been thus avoided by mere oral agreement of compromise. This being so, the defendant was entitled to a directed verdict in the lower court. Erroneous instructions, therefore, could not have worked any prejudice to plaintiff.

On that ground, the judgment below is—*Affirmed.*

MORLING, C. J., and STEVENS, DE GRAFF, ALBERT, KINDIG, and GRIMM, JJ., concur.