[No. 28932.    Department One.    February 24, 1943.]

THE LLOYD COMPANY, *Respondent*, v. M. A. WYMAN *et al.*, *Appellants*.[1]

[1]Reported in 134 P. (2d) 459.

622

*C. E. Hughes,* for appellants.

*G. M. LeCocq,* for respondent.

MILLARD J.—This action was instituted by a domestic corporation to recover against M. A. Wyman and wife and M. A. Wyman Lumber Company, a corporation, and a copartnership composed of Theodore F. Anderson and wife, Conrad Nelson and wife, and Louis Torvinen and wife, doing business as Swartz Lake Lumber Company, for materials alleged to have been furnished and delivered to the copartnership under the terms of a written agreement between M. A. Wyman and the copartnership. Thereafter, plaintiff filed an amended complaint, which is not materially different from the original complaint, on which plaintiff was awarded recovery against M. A. Wyman and wife for $1,111.92, less $500 paid April 24, 1942, on partial satisfaction of a default judgment against the copartnership for $1,111.92.

During the trial, it developed that there was no such corporation as M. A. Wyman Lumber Company. The motion of M. A. Wyman and wife for a new trial was

granted. Plaintiff filed a second amended complaint June 1, 1942, seeking recovery on an alleged oral promise made July 3, 1941, by M. A. Wyman to pay for goods, wares, and merchandise to be furnished to defendants, which goods were supplied to defendants until November 22, 1941, in the total value of $1,111.92. Plaintiff also alleged that the oral agreement of M. A. Wyman was later augmented by a written agreement executed August 18, 1941, between M. A. Wyman and defendants for financing of the sawmill business of defendant copartners.

By answer, the Wymans admitted execution of the written contract but denied making the alleged oral promise, and pleaded, as affirmative defenses: (1) No privity of contract between plaintiff and defendants in the written agreement of August 18, 1941; (2) that, if an oral promise was made by the Wymans to pay plaintiff for materials ordered by and delivered to the copartners, same was unenforcible as violative of the statute of frauds, which requires such promise to be in writing and signed by the party to be charged; and (3) that the oral promise, if made, was without consideration to the Wymans; therefore, it was void.

Trial of the cause to the court resulted in findings that, July 8, 1941, M. A. Wyman *made a* direct and express *oral promise* to plaintiff that the former would pay for goods, wares, and merchandise to be supplied by plaintiff to the copartners, doing business as Swartz Lake Lumber Company, upon orders of said copartners; that, in reliance upon said express promise, plaintiff supplied the goods to the copartners upon their orders; and that plaintiff is entitled to recovery therefor against defendants Wyman of the difference between the amount of the default judgment against the copartners and partial satisfaction of that default judgment by sheriff's sale of the interest of the copartners in the

Swartz Lake Lumber Company. Judgment was entered accordingly. M. A. Wyman and wife have appealed.

■ The trial court was of the view, and respondent correctly concedes, that no liability to respondent attaches to appellants under the written contract of August 18, 1941, between Wyman and the copartners doing business as the Swartz Lake Lumber Company, as respondent was not a party to the contract nor were appellants required under that contract to pay respondent or any creditors of the copartnership. Respondent states that reference was made to the written contract merely for the purpose of showing the arrangements existing between appellants and the copartnership.

Under that contract, Wyman was obligated to furnish the necessary money for payment of labor, purchase, and installation of machinery in a sawmill to be operated by the copartners, in consideration of which the copartners agreed to sell the entire output of their sawmill to M. A. Wyman, who was engaged in the wholesale lumber business, for a period of two years from date of operation, and to assume and pay to Wyman certain other indebtedness owing to him. No language is employed in the contract from which it is reasonably deducible that appellants and the copartners were liable jointly as codebtors for purchases made by the copartners. The promise of the copartners to Wyman to apply the output of the mill in payment for advances of moneys by Wyman to the copartners could not inure to the benefit of respondent, between whom and appellants there was no privity of contract.

■ We agree with the contention of counsel for appellants that respondent has not sustained the burden of proving that the alleged oral promise of appellants was an original undertaking outside the statute of frauds, which provides that every special promise to

answer for the debt of another person shall be void unless such promise, or some note or memorandum thereof, be in writing and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized. Rem. Rev. Stat., § 5825 [P. C. § 7745].

Respondent's first witness, Theodore F. Anderson, testified that he was one of the copartners of Swartz Lake Lumber Company, and that he attended to all of the business of the copartnership; that, in July, 1941, he visited respondent's office at Everett and requested respondent's bookkeeper for a line of credit for the copartnership for materials to be used in rebuilding a sawmill at Granite Falls, Washington. He further testified that he advised respondent's bookkeeper to charge the material to the copartnership and send a copy of the invoices to M. A. Wyman at Seattle in accordance with his instructions from Wyman. The amount of his order for the copartnership that day was about twenty to thirty dollars. The bookkeeper called Wyman by long distance phone in Anderson's presence to ascertain whether Wyman would pay "this bill" and thereupon the copartnership was given a line of credit. Wyman paid the July bill for the copartnership, and, at Anderson's request, he also paid a part of the August bill for the materials furnished to the copartnership.

Respondent's second witness, its bookkeeper, testified that Anderson visited respondent's office about the first part of July, 1941, to obtain credit for mill supplies for the copartnership, and he told her to charge same to the copartnership and send copies of the invoices to Wyman. In answer to her inquiry as to how much material he wanted, Anderson responded that it amounted to twenty-six dollars that day. The bookkeeper then telephoned Wyman and inquired whether he would pay for this material that Mr. Anderson

would be getting from time to time, to which inquiry Wyman gave an affirmative answer. She could not remember the language used by Wyman, but she understood him to direct that the bills be sent to him and he would pay them; that he meant to guarantee the bills up to any amount. While this witness admitted that she should have obtained a letter confirmatory of the telephone conversation, none was ever received from appellants, and respondent never requested any confirmation of the conversation. No further communication was had between appellants and respondent from the date of that conversation until November 26, 1941.

Invoices for the purchases for the month of July, 1941, were sent to appellants and paid in August. The bill for the invoices for the month of August, 1941, was promptly paid by appellants in September. Appellants refused to pay for the materials delivered to the copartners during September, October, and November. Respondent's invoices require settlement at the end of each month; nevertheless, respondent was not alarmed at tardiness in the matter but continued to send materials to the copartners and to send a copy of the invoices to Wyman until November 22, 1941, as respondent deemed sixty days' credit was not unusual.

Respondent's third witness, a salesman in respondent's shipping room and who is a son of the president of respondent corporation, testified that he took the responsibility for credit given to respondent's customers. He consulted respondent's bookkeeper concerning the extension of credit and was informed that Mr. Wyman was applying for credit for the Swartz Lake Mill through Mr. Anderson, and that Mr. Wyman "had guaranteed payment of these bills." This witness testified further that Mr. Wyman was a stranger to him, that he read the contract between Wyman and the co-

partners executed August 18, 1941, and his understanding of the contract was that Wyman was liable for all deliveries to the Swartz Lake Lumber Company, which is the reason the materials were furnished by respondent to the copartners.

Respondent's attorney, its fourth and last witness, admitted that, as late as January 29, 1942, he relied entirely upon the written contract of August 18, 1941, for recovery against appellants.

Appellants' first witness, an employee of the telephone company, produced the original statement which disclosed that the long distance phone conversation between Mr. Wyman and respondent's bookkeeper lasted only thirty-three seconds.

Mr. Wyman, the appellant, testified that, on the date in question, some one at respondent's office called him by long distance telephone and stated that Mr. Anderson was there and wanted to purchase some materials for the copartners. In answer to Mr. Wyman's inquiry, he was informed that the amount was twenty-five or thirty dollars, whereupon Wyman said: "OK, supply him and send me the bill." Wyman paid for those materials delivered to the copartnership in July in accordance with his promise, and he paid the August bill at the request of the copartners and for their convenience, and, in turn, he charged the amount against the copartners. He denied that he ever promised to pay any bills for the copartnership except the one order on July 8, 1941.

The statements of respondent's bookkeeper are ambiguous and amount to nothing more than that appellant orally promised "to answer for the debt of" another person. The information received by respondent's salesman and credit man from the bookkeeper to the effect that Wyman guaranteed payment of the bills, does not buttress the position of respondent that this

was an original undertaking outside the statute of frauds.

Respondent proved, accepting as true the evidence adduced by it, that Wyman orally promised to pay, or become responsible, for purchases of materials by the copartners from respondent. That oral promise was a collateral promise to answer for the debt or default of another; hence, offends against the statute of frauds and is void. *Goldie-Klenert Distributing Co. v. Bothwell*, 67 Wash. 264, 121 Pac. 60, Ann. Cas. 1913D, 849; *Seiffert Co. v. Wright*, 108 Wash. 616, 185 Pac. 577.

Respondent seeks to recover for extension of credit to the copartners solely upon an alleged oral promise of Wyman to pay for the materials supplied to the copartnership. Nevertheless, respondent joined with the Wymans, as parties defendant, the copartners against whom respondent secured a default judgment, after demand on them for the full amount due for the materials furnished to the copartners, and received a partial satisfaction of that judgment.

There was some evidence by respondent that it had charged the account to appellants; but, as observed by the trial court, the understanding and conduct of respondent are not binding upon appellants. Respondent elected to hold the copartners liable, hence appellants' promise was collateral.

"It is requisite that credit should be given exclusively to the promisor; if any credit is given to him for whose benefit the promise is made the promise is collateral and within the statute, and this is so, although the collateral undertaking may have been the principal inducement to the delivery of the goods or the performance of the services. Where the promise is shown to be collateral, the question whether the creditor relied on the credit of the promisor becomes immaterial. There is some authority for the view that the promise is original and not within the statute, although the third person who received the benefit is also concurrently liable therefor,

provided the credit was given solely to the promisor, and the promisee did not rely upon the liability of the third person. But the great weight of authority rejects this view and holds that if the third person is liable at all the promise is collateral and must be in writing, unless there is a new consideration beneficial to the promisor received under such circumstances that he thereby comes under an independent duty to pay without regard to the liability of any other person. . . ." 27 C. J. 142.

Respondent's position is also untenable in view of absence from the record of any allegation or proof of consideration to appellants for the alleged oral promise. The court found merely that the materials were furnished by respondent to the copartners by reason of an alleged oral promise of appellants to respondent to pay therefor. There is no showing that appellants received any advantage from the oral promise claimed to have been made by them. The fact that respondent may have suffered a detriment by supplying the materials to the copartners, even if respondent relied upon the alleged oral promise, would not be sufficient. In *McKenzie v. Puget Sound Nat. Bank,* 9 Wash. 442, 37 Pac. 668, 43 Am. St. 844, where the same question was before us, we said:

"Any promise to pay, whether in writing or not, must be founded upon a consideration to be binding. A consideration to support a promise not in writing to pay the debt of another must be of a peculiar character, and must operate to the advantage of the promisor, and place him under a pecuniary obligation to the promisee independent of the original debt, which obligation is to be discharged by the payment of that debt."

In *Collins v. Nelson,* 193 Wash. 334, 75 P. (2d) 570, in discussing the question of consideration to the promisor, we said:

"Assuming, as the court found, that the promise was

in fact made, it was nevertheless nothing more than a promise without any binding legal effect upon Nelson.

"If it were an original, or direct, promise on the part of Nelson, then it was unenforceable as to him because there was no consideration whatever moving to Nelson. The promise was wholly gratuitous on his part.

"If, on the other hand, it was a promise to answer for the debt, default or misdoing of Reed, as the court found it to be, then it was clearly within the statute of frauds, Rem. Rev. Stat., § 5825 [P. C. § 7745], because neither the promise nor any memorandum thereof was in writing."

In *Leytham v. McHenry*, 209 Iowa 692, 698, 228 N. W. 639, the court said:

"In short, whereas, in an ordinary contract, a *consideration* is deemed such if it operates to the disadvantage of the promisee, even if it does not operate to the advantage of the promisor, such is not the proper definition of *consideration*, as applied to an independent contract or obligation, which will avoid the statute of frauds. In such a case, the consideration must move to the promisor."

If appellants made an oral promise to pay respondent, there is no consideration to support the promise; hence it is unenforcible.

The judgment is reversed and the case remanded, with direction to dismiss this action.

SIMPSON, C. J., BLAKE, and JEFFERS, JJ., concur.

STEINERT, J. (dissenting)—In my opinion, appellants' promise to pay, although oral, was an original, direct, and express promise, and was founded upon adequate consideration. I therefore dissent.