[No. 16575.   Department Two.   January 13, 1922.]

BARNETT BROTHERS, *Appellant,* v. S. F. LYNN *et al.,*
*Respondents.*[1]

CORPORATIONS—CONTRACTS—LIABILITY OF STOCKHOLDER OF CORPO-
RATION. The presence of individual stockholders of a fruit growing
corporation at a meeting between the corporation and a fruit buyer,
in which such stockholders voted that the corporation sell the fruit
of the members to the fruit buyer, would not create a contract lia-
bility against the individual stockholders.

FRAUDS, STATUTE OF (1)—PROMISE TO PAY DEBT OF ANOTHER. An
oral promise by a stockholder of a corporation to become personally
liable for its debts beyond the extent to which he stands liable under
the law, being a promise to answer for the debt, default or mis-
carriage of another, is unenforceable within the statute of frauds.

PRINCIPAL AND AGENT (52-1)—UNDISCLOSED AGENCY—LIABILITY OF
AGENT. Where, at the time of entering into a contract, it is fully
known by the parties thereto that it is made for the benefit of
other parties, no question of undisclosed principal is involved, and
the contract is enforceable only against the party named, without any
right of recourse against the third parties who are beneficially in-
terested.

EVIDENCE (156)—PAROL EVIDENCE TO VARY WRITING—PARTIES TO
INSTRUMENT. Where a corporation entered into a written contract
to sell the fruit of its stockholders, the contract cannot be varied by
oral evidence that it was intended to bind the stockholders individ-
ually.

Appeal from a judgment of the superior court for
Lincoln county, Sessions, J., entered December 2, 1920,
upon sustaining a demurrer to the complaint, dis-
missing an action on contract.   Affirmed.

*Lee & Kimball,* for appellant.
*Freece & Pettijohn,* for respondents.

HOLCOMB, J.—This appeal is by plaintiff from an
order sustaining a demurrer to its amended complaint,
and judgment of dismissal based thereon. The ground

[1]Reported in 203 Pac. 387.

of demurrer, as sustained, is that the amended complaint does not state facts sufficient to constitute a cause of action.

Aside from the formal allegations, the amended complaint alleges substantially: That plaintiff, a foreign corporation, was engaged in buying fruit in Washington for shipment and sale wholly in interstate commerce; that it was offered defendants' fruit through the Peach Fruit Growers' Company, defendants being present at a stockholders' meeting of the company held for the express purpose of receiving offers from plaintiff and others for the fruit grown by defendants and others, defendants voting upon all motions relative to such matters, and voting in favor of accepting plaintiff's offer for all such fruit, including that grown by defendants; that the price of each kind of fruit is specified in the contract; that the trustees of the growers' company were empowered, by vote of defendants and others, to execute the formal contract; that such contract was made in writing and signed by one Alex Lindsay, agent of the Earl Fruit Company of the Northwest, and on behalf of plaintiff, the agent Lindsay announcing that the party purchasing the fruit was plaintiff, and that the contract was to be assigned to plaintiff by the Earl Fruit Company of the Northwest—which the amended complaint alleges was done—that defendants failed and refused to deliver their fruit to the plaintiff, but sold and delivered the same to another dealer; that defendants had produced and sold and delivered to the other dealer 1,763 boxes of winter apples; that the contract price thereof, under which they were contracted to be delivered to plaintiff, was $1.40 per box, and that the market value thereof on October 15, 1919, the date when they were harvested, packed and ready for mar-

ket, and the date when they should have been delivered to plaintiff under the terms of the contract, was $2.20 per box; that plaintiff suffered damages in the sum of $1,410.40, being at the rate of 80c per box for 1,763 boxes.

There is also set out in full in the amended complaint a contract made and entered into between respondents and the Peach Fruit Growers' Company for the handling of respondents' fruit in the season in question. A paragraph of that contract is as follows:

"9. Whereas the Association must provide for the payment of certain overhead expenses and fixed charges and must expend such sums as are necessary to keep in touch with crop and market conditions and must provide warehouse and storage facilities in proportion to the tonnage contracted; and whereas such expenses should be pro-rated over all of the fruit contracted to be sold, the Grower, therefore, agrees that in the event he withholds his fruit or any part thereof in contravention of this agreement, he will pay to the Association for each package of fruit so withheld, as liquidated damages for such violation of his contract, the sum of three and one-half cents (3½c) for each box of apples or pears; three and one-half cents (3½c) for each crate of berries or cherries; one and three-quarter cents (1¾c) for each crate or box of prunes or peaches, and for other varieties of fruit an amount in such proportion to above charge made for apples as the average market price of the fruit in question bears to the average price of apples during the season in which the violation occurred."

It was contended by respondents, upon demurrer, that, under the foregoing provisions, liquidated damages were stipulated between respondents and their own agent, the Peach Fruit Growers' Company, and that therewith appellant had no concern. The only argument of appellant in its opening brief is that, since the parties are competent to make the contract

in question and actually entered into it, appellant having fulfilled all the terms thereof which were its to perform, and respondents having defaulted, thereby causing damages to appellant as alleged, there is no rule of law by which respondents can be absolved from their obligations to pay the amount of such damage and loss. It is urged that the facts pleaded clearly established an ordinary contract of sale and ·failure to make delivery; that the measure of damages is clear and the facts are clear.

We are unable to see by what proposition of law appellant contends these private respondents are to be held for the contract liability of the Peach Fruit Growers' Company, which is alleged in the amended complaint to be a corporation organized and existing under the laws of the state of Washington.

A stockholder is, in law, a different person from a corporation, and his promise, if any, to become personally liable for the debts of the latter beyond the extent to which he stands liable under the law is a promise to answer for the debt, default or miscarriage of another, and hence is within the statute of frauds and not enforceable unless in writing. 10 Cyc. 650. The legal liability of these stockholders is only to the extent of their unpaid stock subscription for any debt or liability of the company, and there is no such fact alleged in the amended complaint.

It is urged by appellant that, since the only fruit to be sold was the fruit of individuals present and voting to sell the fruit at the time the contract that is sued upon in this case was invited, therefore the contract in question was the contract of the growers, although the form in which they were to contract was as set forth in the writing with the Peach Fruit Growers' Company. Cases are then cited to the effect that a

person who enters into a contract with another and causes it to be reduced to writing in the name of his agent, or under an assumed name or the name of another, may be identified by parol evidence as the real party in interest, and thus subjected to liability thereon. *Pleins v. Wachenheimer,* 108 Minn. 342, 122 N. W. 166, 133 Am. St. 451; *Great Lakes Towing Co. v. Mill Transportation Co.* (C. C. A.), 155 Fed. 11; *Karns v. Olney,* 80 Cal. 90, 22 Pac. 57, 13 Am. St. 101; *Heffron v. Pollard,* 73 Tex. 96, 11 S. W. 165, 15 Am. St. 764; *Sparks v. Dispatch Transfer Co.,* 104 Mo. 531, 15 S. W. 417, 24 Am. St. 351, 12 L. R. A. 714; *Scanlan v. Grimmer,* 71 Minn. 351, 74 N. W. 146, 70 Am. St. 326; *Hartman v. Thompson,* 104 Md. 389, 65 Atl. 117, 118 Am. St. 422.

But this is not the case of an undisclosed principal, and is not a case of adoption of a business name or an assumed name or the name of another for the purpose of transacting business; but here the contract was reduced to writing and was made in the name of the Peach Fruit Growers' Company, Incorporated, as principal, and appellant reinforces the fact of the identity of the principal by attempting to show that respondents were stockholders present at the meeting which authorized the Fruit Growers' Company to enter into the contract, thereby showing that, if respondents were the principals, they were then disclosed and known to appellant.

In the case of *Great Lakes Towing Co. v. Mill Transportation Co., supra,* the circuit court of appeals held that:

"If a principal not disclosed by a contract made by and in the name of his agent subsequently claims the benefit of it, it thereby becomes his own to the same extent as if his name had originally appeared as a contracting party."

It must be admitted that there is a great contrariety of opinion among the courts upon this question. They were well weighed and analyzed in an opinion by the California supreme court in the case of *Ferguson v. McBean,* 91 Cal. 63, 27 Pac. 518, 14 L. R. A. 65. The court in that case rejected the pronouncement of no less an authority than Judge Story [Story on Agency, § 160a], saying:

"The cases in which the question has arisen are those in which an agent has contracted in his own name, and his principal has afterwards sued or been sued on the contract, and Judge Story, in his work on Agency, section 160a, says that the doctrine maintained in the more recent authorities is, that 'if the agent possesses due authority to make a written contract, not under seal, and he makes it in his own name, whether he describes himself to be an agent or not, or whether the principal be known or unknown, he, the agent, will be liable to be sued and be entitled to sue thereon, and his principal also will be liable to be sued and be entitled to sue thereon in all cases, unless from the attendant circumstances it is clearly manifested that an exclusive credit is given to the agent, and it is intended by both parties that no resort shall in any event be had by or against the principal upon it.'

"But an examination of the authorities cited in support of this statement shows that they do not support it, as has been frequently pointed out.

"It is undoubtedly true that when the principal is undisclosed he may sue or be sued, but not when he is known, and especially not when he is present at the making of the contract.

"For a full and able discussion of the whole subject see *Chandler v. Coe.,* 54 N. H. 561, and *Gillig v. Road Co.,* 2 Nev. 216, and cases therein cited.

"Considered independent of authority, we think sound policy requires the enforcement, in cases such as these, of the general rule that a writing cannot be varied by parol. It is as important to know who has made a contract as to know its terms; and when the

parties put it in writing, there is no more reason or excuse for omitting the name of a known party, whom it is the intention to bind, than there is for omitting its most important stipulation. To allow such a practice opens the door, in every case, to such conflicts of evidence as this case illustrates upon a point which can be easily and forever set at rest by simply making the written evidence of the contract conform to the mutual understanding of the parties as to matters fully within their knowledge."

And that, we think, is sound reasoning and the reasoning to be applied here. It is rested upon the only rule capable of general and steady application. If appellant knew, when the contract was entered into, as it alleges, that it was made for the benefit of third parties (the respondents), the contract should have been made so to show, which was not done. This conclusively indicates that the appellant or its assignor elected to look to the party named in the contract for the performance of the contract.

We are well satisfied that the demurrer was properly sustained, and the judgment of dismissal is affirmed.

PARKER, C. J., MAIN, MACKINTOSH, and HOVEY, JJ., concur.