[No. 25543. Department Two. July 20, 1935.]

N. C. JANNSEN, *Appellant,* v. ZELLA CURTIS,
*Respondent.*[1]

*Wright & Wright (Felix Rea,* of counsel), for appellant.

*W. W. Montgomery* and *Everett O. Butts,* for respondents.

BLAKE, J.—On July 11, 1933, the defendant, Zella Curtis, and D. J. McBirnie organized a corporation called Curtis Natural Gas, Inc., in which each had a fifty per cent interest. McBirnie owned or controlled gas and oil rights in certain property in Whatcom county. A hole had been sunk on the property to a depth of 1,024 feet. The purpose of organizing the corporation was to finance drilling to a greater depth. McBirnie turned his rights in the property over to the corporation for his half interest therein, and Mrs. Curtis agreed to finance the drilling for hers.

On July 12, 1933, the corporation entered into a contract with the plaintiff to sink the hole to a depth of 1,300 feet. The corporation agreed to pay plaintiff ten

[1]Reported in 47 P. (2d) 662.

dollars a foot for drilling, and the further sum of $450 to cover the expense of moving his drilling outfit onto the property.

Plaintiff, having drilled the hole to the required depth, had coming, under the terms of the contract, the sum of $3,210. Of this amount, he had received, during the progress of the work, $2,315.50. This action was brought to recover the balance from Zella Curtis, upon an alleged oral promise to pay plaintiff in accordance with the terms of the contract. The trial court made findings favorable to defendant and entered judgment dismissing the action. Plaintiff appeals.

The promise giving rise to the action was alleged to have been made January 29, 1934. The contract with the corporation provided for payments to be made on a footage basis on the first and fifteenth of each month. It was provided that appellant could cancel the contract for nonpayment. He started drilling operations in September, 1933. December 20, 1933, after sinking the hole to a depth of 1,197 feet, he ceased operations and canceled the contract for nonpayment. At that time, he had received a total of $1,460—the last payment having been made on November fifteenth.

In the latter part of December or early part of January, Mrs. Curtis went to California, and was gone until January 29th. That day, she went with McBirnie to appellant's office. Appellant, McBirnie, and Mrs. White, appellant's bookkeeper, testified that Mrs. Curtis then promised that, if appellant would resume and complete drilling operations under the terms of the contract, she would pay what was then owing by the corporation and also the balance to become due for sinking the hole to a depth of 1,300 feet. Respondent categorically denied making any such promise at that or any other time.

She did, however, pay to appellant $100 in cash on that day or the next. Likewise, she paid in cash $100 on February 1st; $112.50, February 3rd; $100, February 5th; $200, February 19th; $100, February 23rd; and $98, April 3rd. Theretofore, all payments (except $45 paid by McBirnie) had been made by check of Curtis Natural Gas, Inc.

Shortly after January 29th, appellant resumed operations and completed drilling in accordance with the terms of the contract. Appellant continued to carry the account in the name of Curtis Natural Gas, Inc.

The foregoing facts (except as to Mrs. Curtis' promise to pay) are not in dispute.

Appellant contends that, on these facts, the preponderance of the evidence is against the court's finding that Mrs. Curtis did not promise to pay. With this contention, we are inclined to agree. But it does not follow that appellant is entitled to recover. The promise was to answer for the debt of the corporation. Not being in writing, it will not support an action, unless there was some benefit or consideration running to Mrs. Curtis, other and different from that accruing to the corporation itself. *Burns v. Bradford-Kennedy Co.*, 61 Wash. 276, 112 Pac. 359; *Davies v. Carey*, 72 Wash. 537, 130 Pac. 1137; *Guth v. First Natl. Bank of Odessa*, 137 Wash. 280, 242 Pac. 42.

There is no evidence whatever that Mrs. Curtis would receive any benefit by the completion of drilling operations, other than that incident to her ownership of a one-half interest in Curtis Natural Gas, Inc. The question then is: Does the bare fact of stock ownership suffice as consideration for a promise by a stockholder to pay the debt of the corporation? By the clear weight of authority, the answer is no. *Richardson Press v. Albright*, 224 N. Y. 497, 121 N. E. 362, 8 A. L. R. 1195. (See note, p. 1198.)

502

This court has also given a negative answer to the question. *Goldie-Klenert Distributing Co. v. Bothwell,* 67 Wash. 264, 121 Pac. 60. Bothwell was the principal stockholder of the Luneta Cafe, a corporation. He promised to pay a past due account of the Luneta Cafe, and guaranteed payment of purchases to be made by it in the future, in consideration of Goldie-Klenert Distributing Company's forebearance to sue on the past due account. The court held the promise came under the ban of the statute of frauds. There is some discussion in the opinion as to the *form* of the promise, as distinguished from its *substance.* This discussion, however, does not detract from the force of the holding as authority for the judgment in this case. As was said in *Richardson Press v. Albright, supra:*

"The ancient purpose of the Statute of Frauds was to require satisfactory evidence of a promise to answer for the debt of another person, and its efficacy should not be wasted by unsubstantial verbal distinctions."

The judgment is affirmed.

MILLARD, C. J., MITCHELL, HOLCOMB, and STEINERT JJ., concur.