[No. 29071. Department One. November 18, 1943.]

STOWELL LUMBER CORPORATION, *Respondent,* v. M. A. WYMAN, *Appellant,* THEODORE S. ANDERSON *et al., Defendants.*[1]

[1]Reported in 143 P. (2d) 457.

 

*C. E. Hughes,* for appellant.

*Alden B. Whelan,* for respondent.

STEINERT, J.—Plaintiff, a corporation, brought suit against several individual defendants to recover for goods, wares, and merchandise sold and delivered by it. Only one of the defendants appeared and resisted the action. Upon a trial without a jury, the court made findings of fact, upon which judgment was entered in favor of the plaintiff against the resisting defendant only. The latter appealed.

The original complaint alleged: That, on or about August 18, 1941, appellant, M. A. Wyman, doing business under the name of M. A. Wyman Lumber Company, entered into a written agreement with the other defendants named in the complaint, Theodore S. Anderson and Louis Torvinen, copartners doing business under the name of Swartz Lake Lumber Company, by the terms of which Wyman guaranteed and agreed to pay for all labor and materials necessary for the construction of a certain sawmill, in consideration of which the copartners agreed to install the necessary materials and machinery therein, operate the sawmill, sell and deliver to Wyman all the products manufactured at the mill, and repay Wyman all moneys advanced by him in that venture; that, on or shortly before August 6th, Wyman orally requested respondent to furnish to the defendant copartners any material ordered by them for use in the construction of the sawmill; that, between August 6, 1941, and December 17th of the same year, respondent delivered to the copartners, pursuant to such request, building material of the reasonable and agreed value of $708, all of which was necessary for, and used in, the completion of the proposed structure; that no part of that amount had been paid except the sum of $112.50, leaving a balance of $595.50 due and owing; and that de-

mand for payment had been made upon the "defendants" named in the complaint, but that they had failed to comply with the demand. The prayer sought judgment against each of the named defendants. The complaint was verified on April 20, 1942, at which time respondent was represented by attorneys other than the one representing it now.

On September 4, 1942, respondent, represented by its present attorney, verified, and thereafter filed, its amended complaint, which alleged simply that, between August 6th and December 17th, 1941, respondent sold to the appellant certain materials and, at his request, delivered the merchandise to the defendants Anderson and Torvinen, doing business as Swartz Lake Lumber Company; that appellant agreed to pay for the materials; that he did pay the sum of $112.50, but failed to pay the balance of the bill amounting to $595.50; and that payment had been demanded of the defendants named in the complaint, but that they had failed to comply with the demand. The prayer of the amended pleading likewise demanded judgment against *all* the named defendants.

In his answer, appellant denied the material allegations of the amended complaint and then set up two affirmative defenses: (1) that, if, as alleged, the appellant orally promised to pay respondent, such promise was in violation of the statute of frauds; and (2) that such promise, if made, was without consideration.

The cause went to trial upon the issues thus presented, and the court made a finding of fact that the respondent had sold the building materials to the appellant and, at his direction, had delivered them to the defendant copartners.

The crucial question upon this appeal is whether appellant's alleged oral promise was a direct, original agreement, constituting an undertaking on the part of the appellant himself to pay for the merchandise, or whether it was merely a collateral agreement on his part to answer for the debt of the defendant copartners. If the promise be held to be a collateral agreement, having the effect just indicated, then it comes within the application of Rem. Rev.

Stat., § 5825 [P. C. § 7745], which provides that every special promise to answer for the debt, default, or misdoings of another person shall be void, unless such promise or some note or memorandum thereof be in writing. If, on the other hand, the promise be held to be a direct, original agreement on the part of the appellant to pay for the goods, although delivered to the defendant copartners, then the statute does not apply, and the agreement is enforcible.

■ The question in this case is primarily one of fact, to be determined by a consideration of the evidence, with the view of ascertaining the person to whom it was agreed the credit should be extended. In determining that question, regard must be had to the situation of the respective parties, the words used by them, their understanding of the words used, and all the circumstances connected with the particular transaction. *Sperry Flour Co. v. Krehbeil*, 133 Wash. 673, 234 Pac. 1028; 27 C. J. 135, Statute of Frauds, § 20; 25 R. C. L. 489, Statute of Frauds, § 72.

Four witnesses testified for the respondent, while appellant alone testified in his own behalf. The evidence of the opposing parties was for the most part in direct conflict.

Respondent's first witness, Harry F. Stowell, president of the corporation, testified as follows: On August 6, 1941, the defendant Theodore S. Anderson called at the respondent's place of business in Everett and stated that he wanted to purchase one hundred sacks of cement and some other materials for the construction of a sawmill for Swartz Lake Lumber Company located at Arlington. Anderson further stated that payment for the material would be made by Wyman Lumber Company of Seattle. Stowell, not knowing Anderson or the Swartz Lake Lumber Company, said in reply that before making delivery of the material he would have to call the Wyman Lumber Company, which he knew by reputation, and ascertain whether that company would pay for the supplies. On the same day, after making inquiry as to the credit of the Wyman Lumber Company, Stowell called the office of that company at Seattle by long distance telephone and asked for Mr. Wyman.

After a short pause, a man answered the 'phone and gave his name as "Wyman." Stowell then related what Anderson had previously told him, and stated that if the Stowell Lumber Company supplied the material the charge therefor would have to be made to the Wyman Lumber Company. In response to Stowell's inquiry as to whether it would be all right to deliver the material to Anderson and charge the amount to Wyman Lumber Company, Wyman answered, "Yes, go ahead." Thereupon, respondent delivered to Swartz Lake Lumber Company material of the value of $89.61. During the next two weeks respondent also delivered to the same company other material of the value of $25.18.

On August 26, 1941, Anderson again came to respondent's office, with the view of placing an order for a quantity of fire brick, fire clay, lime, and cement to be used in the construction of a boiler for the sawmill. The proposed order was for about five hundred dollars worth of such materials. Stowell thereupon stated that on account of the size of the order he would have to get an authorization from Wyman. He therefore again called Wyman by long distance telephone and advised him of Anderson's proposed order amounting to approximately five hundred dollars. In that conversation, Stowell asked Wyman whether he would pay for the material to be delivered to Anderson, as well as for the material already delivered, and Wyman said that he would.

Pursuant to that telephonic communication, respondent made deliveries of various materials to the Swartz Lake Lumber Company on various dates between August 26 and December 17, 1941. The total of these amounted in value to approximately $625. Invoices and monthly statements were sent regularly to Wyman Lumber Company, showing on their faces that the materials were sold to the latter company although delivered to Swartz Lake Lumber Company. There was, however, never any written confirmation of either of the two telephone conversations referred to above.

On or about September 15, 1941, Wyman Lumber Company drew its check for $112.50 and mailed it to the respondent in payment of the bills for the materials delivered prior to August 26th, less the usual discount thereon. No other payments on the account have been made.

On receipt of respondent's monthly statement of November 28, 1941, the Wyman Lumber Company on December 2nd wrote to the respondent advising it that "This should be charged to Swartz Lake Lumber Co. in care of the M. A. Wyman Lumber Co." That letter was received by the respondent company while Mr. Stowell was confined in a hospital. Respondent's bookkeeper, thinking that it was merely a matter of form which concerned only the Wyman Lumber Company and the Swartz Lake Lumber Company, prepared and sent a new statement as requested, covering all orders from August 6th to October 14th, and reading "Sold to Swartz Lake Lumber Co. c/o M. A. Wyman Lumber Co., Henry Building, Seattle."

Stowell further testified that at no time did he look to Anderson or Swartz Lake Lumber Company for payment, or endeavor to collect the account from them, and that at no time did Wyman Lumber Company deny the account.

In support of Stowell's testimony, respondent offered two telephone bills showing calls made by respondent on August 6th and August 26th directed to "Elliott 3108, Seattle," which was the telephone number of M. A. Wyman Lumber Company.

Respondent's next witness was Theodore S. Anderson. He related the circumstances under which the sawmill was built and operated. At first it was contemplated that the mill would cost about twenty-eight hundred dollars, but by the time it was completed nearly forty thousand dollars had been expended, a great part of which amount was furnished by Wyman, who took a chattel mortgage on the property in August or September, 1941. The products of the mill were, and could be, sold by Swartz Lake Lumber Company only through the Wyman Lumber Company. Anderson also testified that sometime after the sawmill began to

operate, a buyer for the respondent attempted to purchase some lumber from him and apply it on the account involved herein, but that the buyer was told that the lumber could be sold only through Wyman.

Anderson's testimony with reference to his transactions with respondent is not altogether clear and in some respects is inconsistent. He testified that, when he first called at respondent's office, he told Stowell that Wyman was financing him and would pay for the materials which he proposed to purchase. He also testified that he made a number of trips to respondent's office to purchase supplies and that, upon at least four or five of those occasions, one or the other of the Stowell brothers telephoned to Wyman with respect to the purchases before they would make delivery of the material ordered. At one point, his testimony was as follows:

"Q. You say you never understood that you were to pay for these materials. Do you want the court to understand that? A. Well, the understanding in the very beginning was that we were to get the stuff, Mr. Wyman would help us pay for it, and we would pay Mr. Wyman; so that when I talked to Stowell, it was Stowell's understanding that he wasn't to look to us for the money. I let him understand he wasn't to look to us for the money because we didn't have it at the time, but he'd have to look to Wyman."

At another point, however, he testified that he instructed respondent to bill the material as "Sold to the Swartz Lake Lumber Company, c/o M. A. Wyman Lumber Company," and that the invoices were to be sent to Wyman's office. He also testified that the Swartz Lake Lumber Company was subsequently adjudged bankrupt and that he had listed respondent's account as a liability against that company.

Respondent's third witness, Lawrence B. Stowell, testified only with reference to the delivery of the materials to the Swartz Lake Lumber Company.

The fourth witness was Mrs. Jeanette B. Miller, who is the bookkeeper and also the treasurer of the respondent company. She testified that on August 26, 1941, she was standing near the telephone while Mr. Stowell held the second

conversation with Mr. Wyman; that she could hear distinctly what was said by both parties to the conversation; that Mr. Stowell asked Mr. Wyman whether the materials could be charged to Wyman personally, and the latter responded "yes." On cross-examination she was interrogated closely with reference to the telephone conversation:

"Q. Well, you know the substance of it? A. Well, the substance was that Mr. Stowell said 'A Mr. Ted Anderson has been here wanting to buy materials—building materials, for a mill that they are building at Swartz Lake, and we know nothing about Mr. Anderson, but he says you are financing this mill; and are we to charge this material to you,—to the Max Wyman Lumber Company?' And the answer was 'Yes.' Q. He asked if they were to charge the materials to the Wyman Lumber Company, that is, the materials that went to the Swartz Lake Lumber Company? A. The materials that were to be delivered to the Swartz. Lake Lumber Company."

A little later, however, upon cross-examination, she testified:

"Q. Do you mean the Court to understand that Mr. Wyman *guaranteed* the payment of these bills? [Italics ours.] A. Well, yes. Q. Is that what you understood from the conversation? A. That was my understanding from the conversation."

At the conclusion of respondent's evidence, the appellant Wyman took the stand. His testimony was very brief. On direct examination, he testified that he had no recollection of ever having had any conversation with the Stowell Lumber Company at any time; that he had never promised to pay or guaranteed payment of the account of anybody, whether at the request of Stowell Lumber Company or of anyone else; that his company had paid the respondent $112.50, however, for two deliveries made to Swartz Lake Lumber Company in August 1941; that this payment was made solely at the request and for the convenience of Mr. Anderson; that he had never received any invoice or statement covering those two items; that he had never heard of the Stowell Lumber Company until sometime in September, 1941, when he was asked to pay the bill sent

that month; that sometime in the early part of 1942 one Floyd Valk called him up with reference to the Stowell account, and that he explained to Valk that he had no interest in the sawmill; that it was his recollection, also, that in that connection he suggested to Valk that the Stowell Lumber Company go out and get some lumber from the Swartz Lake Lumber Company.

On cross-examination, he testified that, in July, August, or September, 1941, he held a chattel mortgage for ten thousand dollars on the sawmill, and that he had advanced funds to the sawmill company "more or less regularly"; that, in the spring of 1942, he received from the Swartz Lake Lumber Company a bill of sale of the sawmill; that, during the operation of the sawmill, the Wyman Lumber Company was supposed to have the entire output of the mill; and that he had explained to various creditors of the Swartz Lake Lumber Company the situation with reference to the affairs of that company, just as he had advised Mr. Valk representing the respondent.

Upon the evidence as thus outlined, the trial court found as a fact that appellant had made a direct promise to respondent to pay for the materials supplied, and from that fact the court concluded and adjudged that appellant was obligated to pay for them to the extent of $559.26. In two oral opinions delivered at the conclusion of the evidence and at the hearing of the post-trial motions, respectively, the trial judge recognized and analyzed the difficulties connected with the situation as presented by the evidence. The judge commented upon the fact that respondent's complaint and amended complaint both demanded judgment against the partnership as well as against the appellant, while upon the hearing relief was sought against the appellant alone. While, in the opinion of the trial judge, that fact served to impeach somewhat respondent's claim as presented solely against the appellant, it did not wholly overcome or destroy its merit. The reason given for this conclusion was that the form of the pleading was but the handiwork of respondent's former counsel, while the merits of the case

depended upon the testimony given by the witnesses.. The trial judge also commented upon the fact that the partnership had gone into bankruptcy since the commencement of the present action. That comment no doubt was made in recognition of the inference that might be drawn that respondent's amended complaint was merely a belated attempt to escape the legal effect of the original complaint.

■ However, after considering all these perplexing factors, and having expressed his careful notation of the demeanor, as well as the testimony, of the various witnesses, the trial judge announced his firm conviction that telephone conversations had been held between Stowell and Wyman, and that in such conversations Wyman had agreed to pay respondent for the materials to be delivered to the Swartz Lake Lumber Company. A careful study of the record as a whole leads us to the same conclusion. The evidence establishes beyond contradiction, we think, that, so far as the respondent was concerned, it entered upon the transaction and made the subsequent deliveries in the sincere belief that the obligation to pay for them was primarily that of the appellant. While the proof of Wyman's knowledge or understanding of that fact is not so clear, we believe that the preponderance of the evidence as disclosed by the record is likewise against him on that issue.

The case of *Lloyd Co. v. Wyman,* 16 Wn. (2d) 621, 134 P. (2d) 459, has many features similar to the case now under consideration, but in a vital particular the two cases are different. In the *Lloyd* case, suit was brought against the present appellant to recover for materials furnished and delivered to the defendant copartners herein. The trial court held in that case, as did the trial court in this case, that Wyman had made a direct, express oral promise to pay for the goods delivered to the partnership. Upon appeal in that case, however, this court held that the plaintiff therein had not sustained the burden of proving that the alleged oral promise of Wyman was an original undertaking, rather than a collateral agreement to answer for the debt of the partnership.

There are at least two features which distinguish that case from this one: (1) In the *Lloyd* case, it appeared that the plaintiff not only took default judgment against the partnership for the amount of goods supplied, but also obtained partial satisfaction of that judgment, thus indicating clearly that the plaintiff therein had not looked to Wyman alone for payment, while here we do not have that circumstance; and, more important, (2) the evidence in that case, as summarized in the opinion therein, did not approach in certainty the evidence in this case with respect to Wyman's direct and express promise to pay for the goods delivered. The difference in the result of the two cases turns upon the difference in the factual situations established by the evidence.

The judgment is affirmed.

SIMPSON, C. J., JEFFERS, MALLERY, and GRADY, JJ., concur.

[1]Reported in 143 P. (2d) 449.