[No. 1324-2.    Division Two.    December 19, 1975.]

SOUTH SOUND NATIONAL BANK, *Appellant*, v. JOHN E. MEEK, ET AL, *Respondents*.

---

H. John Aitken (of Pebbles, Swanson & Lindskog), for appellant.

Don W. Taylor (of Fristoe, Taylor & Schultz) and Ken Ahlf (of Oberquell & Ahlf), for respondents.

PEARSON, J.—This is an action to recover sums allegedly advanced by plaintiff, South Sound National Bank, to MBI Corporation, in reliance on the promises of the defendants, John E. Meek, Robert Bartholet, John Irwin, and their wives, to guarantee loans advanced by plaintiff to the corporation.

The issue framed by the parties is whether RCW 19.36.010, the statute of frauds, precluded plaintiff from attempting to establish by parol evidence terms omitted in the guaranty agreements executed by the defendants. For the reasons stated below, we think the issue presented to both the trial court and this court is somewhat narrower than the asserted issue, and that parol evidence should have been allowed to enable the trial court to initially determine whether the statute of frauds applied to the transaction.

The case is unusual in that no oral testimony was received. At the outset the parties stipulated to the introduction of the documentary exhibits giving rise to the asserted action, after which the statute of frauds question was to be argued as a possible bar to the action.

The following undisputed facts were established by the

exhibits or by stipulation. On August 11, 1971, MBI Corporation executed and delivered to South Sound National Bank a promissory note for $10,000. On November 12, 1971, MBI executed and delivered to plaintiff a second note for $17,500, representing a renewal of the original note and $7,500 in new funds advanced to the corporation. On December 30, 1971, a third note was executed and delivered to the plaintiff by MBI for $6,000. Both the $6,000 and the $17,500 notes were renewed in February 1972. The $6,000 note was renewed a second time on March 10, 1972. It was stipulated that presently there was due and owing on these notes a principal sum of $11,150, plus interest, which amount with attorney's fees and costs plaintiff sought to recover from defendants.

Also admitted into evidence were three documents entitled "Guarantee" each bearing the signature of one of the defendants and his spouse. Three blanks on the forms had not been completed, making it impossible to determine from the instruments (1) who the accommodated party was, (2) the maximum amount guaranteed, and (3) the date each instrument was executed. Each document contained a provision agreeing to guarantee this and all future loans made to the unidentified accommodated party.

Plaintiff accompanied its argument on the applicability of the statute of frauds with an offer to prove that defendants Meek, Bartholet, and Irwin were the sole shareholders, officers, and directors of MBI Corporation;[1] that the guaranty forms were sent to the individuals in blank form, were signed by the defendants in blank, and returned to plaintiff on August 11, 1971, contemporaneously with MBI's first promissory note; that the guaranty agreements were given in consideration for loans of credit by South Sound National Bank to MBI Corporation; and that the loans would not have been made were it not for the guaranties. This offer was rejected, and after argument by counsel the court

---

[1] It should be noted that Bartholet and Irwin signed the various promissory notes on behalf of MBI Corporation as secretary and president respectively, pursuant to a corporate resolution to obtain credit.

ruled that the statute of frauds precluded the evidence offered and constituted a complete defense to the action. In our view this was error, since the offer of proof established prima facie that the promises were outside the purview of the statute of frauds.

■■ First of all, the guaranty agreements are apparently within the purview of the statute of frauds. RCW 19.36.010 provides in part:

> In the following cases, specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: (1) Every agreement that by its terms is not to be performed in one year from the making thereof; (2) Every special promise to answer for the debt, default, or misdoings of another person; . . .

The requirements of the statute are not met unless the written and signed agreement is so complete in itself that parol evidence is unnecessary to establish any of its material elements. *Smith v. Twohy*, 70 Wn.2d 721, 425 P.2d 12 (1967); *Sposari v. Matt Malaspina & Co.*, 63 Wn.2d 679, 388 P.2d 970 (1964); *Coleman v. St. Paul & Tacoma Lumber Co.*, 110 Wash. 259, 188 P. 532 (1920). Furthermore, *collateral* promises, partially oral and partially written in form, are considered oral for purposes of the statute of frauds if a material term must be established by parol evidence. *Le Marinel v. Bach*, 114 Wash. 651, 656, 196 P. 22 (1921).

In the case at bench, it is clear that material elements of the agreements were omitted and the agreements appear on their face to be collateral agreements wholly within the purview of the statute of frauds. *Smith v. Twohy, supra. See Le Marinel v. Bach, supra.*

However, plaintiff vigorously contends the guaranty agreements were not collateral promises, but were "original" promises in which the leading object of the defendants in executing them was to obtain a direct, primary benefit for themselves. Such promises are without the prohibition

of the statute of frauds and may be established by parol evidence. *Davis v. Patrick,* 141 U.S. 479, 35 L. Ed. 826, 12 S. Ct. 58 (1891).

Several Washington decisions have recognized the principle that an oral agreement to answer for the debt of another may nevertheless be enforceable if it is an original promise involving some direct benefit or consideration running to the promisor. *See Smith v. Twohy, supra; Jannsen v. Curtis,* 182 Wash. 499, 47 P.2d 662 (1935); *Guth v. First Nat'l Bank,* 137 Wash. 280, 242 P. 42 (1926); *Davies v. Carey,* 72 Wash. 537, 130 P. 1137 (1913); *Burns v. Bradford-Kennedy Lumber Co.,* 61 Wash. 276, 112 P. 359 (1910).

On the other hand, many Washington decisions have strictly applied the statute of frauds in cases where an individual shareholder has orally guaranteed a corporate debt. These cases hold that the mere status of a guarantor as a corporate shareholder is an insufficient direct benefit of itself to make such promise an original one. Consequently, the statute of frauds has often barred recovery on such promises. *Smith v. Twohy, supra; Jannsen v. Curtis, supra; Barnett Bros. v. Lynn,* 118 Wash. 308, 203 P. 387 (1922); *Miller v. Denny,* 115 Wash. 635, 197 P. 936 (1921). The policy underlying these decisions is apparently grounded upon the idea that a shareholder normally receives no direct benefit from a loan to his corporation, and that the indirect benefit incident to his stock ownership is an insufficient one as a matter of policy.

But it is evident in the case at bench that plaintiff was denied the right to establish the exception to the statute of frauds, namely, that defendants' promises were intended as original promises. Whether a promise is an original one not coming within the statute of frauds, or a collateral one required by the statute to be in writing, is to be determined by the introduction of parol evidence concerning the intent of the parties as manifested in the circumstances of its making, the situation of the parties, the relationship of the defendants to the corporation and to the bank, as well as the objects to be accomplished by the loan.

*Farmers Fed'n, Inc. v. Morris,* 223 N.C. 467, 27 S.E.2d 80 (1943). *See Smith v. Twohy, supra.*

Stated generally, an original promise is one in which the *primary objective* of the promisor is to promote some personal interest of his own, rather than to primarily promote the interests of a stranger. *See generally* 35 A.L.R.2d 906, 910 (1954); *see, e.g., Buice v. Scruggs Equip. Co.,* 194 Tenn. 129, 250 S.W.2d 44 (1952).

■■ Proof that the promise was original necessarily requires the use of parol evidence, otherwise it would be impossible to tell whether the promise was of such a nature as to fall outside the statute. We think this case presents a dilemma often encountered during trial, namely, an item of evidence is offered which is admissible for one purpose but which may be inadmissible for another. When this situation arises the evidence is admissible for the proper purpose, even though it fails to satisfy all the requirements applicable to its admission in some other capacity. *See, e.g., Boyle v. Clark,* 47 Wn.2d 418, 287 P.2d 1006 (1955); *Lundberg v. Baumgartner,* 5 Wn.2d 619, 106 P.2d 566 (1940); 1 J. Wigmore, *Evidence* § 13 (1940); C. McCormick, *Law of Evidence* 135 (2d ed. 1972). In the context of the statute of frauds, parol evidence which would supply material terms omitted from an agreement apparently within the statute of frauds is inadmissible *unless* this evidence also tends to establish an exception which would make the statute inapplicable to the particular agreement in question. In such cases all evidence pertinent to establish the exception is relevant and should be admitted. *See Burlington Indus., Inc. v. Foil,* 284 N.C. 740, 202 S.E.2d 591 (1974); *Farmers Fed'n, Inc. v. Morris, supra. Cf. Miller v. Lawlor,* 245 Iowa 1144, 66 N.W.2d 267, 48 A.L.R.2d 1058 (1954).

Plaintiff's offer of proof was, we think sufficient to establish prima facie that the personal guaranties may have been intended as original promises which furnished a direct benefit to the defendants. The offer of proof suggests a closely held corporation where the three sole shareholder owners were also its managers and directors. While the

mere status of a shareholder may involve an insufficient direct benefit to establish that the promise is an original one, *Smith v. Twohy, supra,* the additional status of defendants as owners of the entire corporate interest and managers and directors of its affairs, when coupled with the promises made to plaintiff to induce the loans, does, we think, establish prima facie that the promises may have been intended as original, rather than collateral. For under such circumstances it appears that the individuals, and not simply their corporate entity, will derive the primary benefit from the loans which were induced by the promises.

At least, we think plaintiff should be allowed to develop the relationship of each of these defendants to the corporation and the circumstances surrounding the loan, for the purpose of establishing factually, if it can, that the promises or any of them were in fact intended to be original promises. *Burlington Indus., Inc. v. Foil, supra; Farmers Fed'n, Inc. v. Morris, supra.*

We add one additional reason for this ruling. The rationale behind the original promise exception to strict application of the statute of frauds is the doctrine of equitable or promissory estoppel. *See Buice v. Scruggs Equip. Co., supra; Miller v. Lawlor, supra. See generally* 56 A.L.R. 3d 1037 (1974). Whether the benefit from the promise is direct or indirect goes to the degree of inequity which results from a strict application of the statute of frauds. When the benefit is direct, the promisor is estopped on principles of equity from asserting the statute of frauds.

It is apparent that any loan to a corporation in a sense benefits each individual shareholder. But in the equitable sense, the benefit remains indirect unless the personal interest of a shareholder in the corporation is such that the loan, induced by his promise, will serve as a substantial benefit to him personally. A closely held and managed corporation certainly has this potential. Accordingly, plaintiff is entitled to explore the relationship of these defendants to

584

the corporation and the underlying circumstances sur-
rounding the loans to the corporation.

Reversed and remanded for a new trial.

PETRIE, C.J., and REED, J., concur.

Petition for rehearing denied April 27, 1976.

Review denied by Supreme Court June 23, 1976.