[No. 21753–4–I. Division One. June 26, 1989.]

WASHINGTON BELT & DRIVE SYSTEMS, INC., *Respondent,* v. ACTIVE ERECTORS, *Defendant,* MICHAEL SPARLING, ET AL, *Appellants.*

*Edward D. Campbell,* for appellants.

*Frank R. Kitchell* and *Kitchell & Judson,* for respondent.

COLE, J.*—Michael J. and Jean M. Sparling (the Sparlings) appeal a personal judgment against them in favor of Washington Belt and Drive Systems, Inc. (Washington Belt), on the open account of Active Erectors & Installers, Inc. (Active), a corporation wholly owned by the Sparlings. Michael Sparling is the chief operating officer of Active. The balance due Washington Belt from Active has never been in dispute. What is in dispute is whether the Sparlings are personally liable for the amount. The action is based on an oral guaranty of the open account indebtedness and other circumstances surrounding the collection process on this account.

---

*Judge W.R. Cole is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

In 1984, after short–term satisfactory business dealings between Active and Washington Belt, Active placed an order for motors which were to be used to move bleacher seats in gyms belonging to the Seattle School District. Active had a contract with the District.[1] The cost to Active for the order placed with Washington Belt totaled over $78,000. The ordered equipment was delivered between September and December of 1984. Active paid $25,000 toward the amount due, but has not made any additional payments. Eventually, Washington Belt began to take preliminary steps toward collecting the balance due. Various employees of Washington Belt attempted to contact Michael Sparling with limited success.

Eventually Washington Belt's controller, Marcelynas, talked to Sparling about payment arrangements for the account. Marcelynas testified that Sparling made an oral promise to him that if Washington Belt refrained from taking a judgment against Active for a period of 1 year, Sparling would personally guarantee the debt. After getting the oral guaranty, Marcelynas indicated he would have a promissory note prepared to record the agreement and get it to Sparling for his signature. Marcelynas testified that Sparling agreed to the terms. After preparation by the attorney for Washington Belt, Marcelynas gave the note to the company's general manager, Smith, who in turn gave it to Urpman, the Seattle Branch Manager of Washington Belt, for delivery to Sparling. Urpman called Sparling to arrange a time when he could deliver the note to get his signature. Urpman testified that Sparling indicated he would sign the note but that he wanted to have his attorney look at it. Therefore, Urpman mailed the note rather than delivering it personally. Sparling received the note but did

---

[1]This contract provided for a retention bond. Sparling argues that because Washington Belt sought no right of foreclosure against either the retention bond or Active's performance bond, Washington Belt's choice of remedies should have been limited. This issue is discussed later in the opinion.

not sign or return it. Sparling testified that he never agreed to a personal guaranty.

Washington Belt commenced an action against Active and the Sparlings on April 25, 1985. After receiving an answer from Active and the Sparlings, Washington Belt forbore from taking further action until December of 1986 when it moved for summary judgment against Active. A judgment was entered against Active on February 5, 1987. After discovering that Active was devoid of assets, Washington Belt pursued its action against the Sparlings personally. Following trial, the trial court gave judgment against the Sparlings for the balance owed, interest, and awarded statutory attorney's fees and costs.

The court found that Michael Sparling, on behalf of himself and his marital community, had personally made an absolute guaranty to secure the payment of the balance Active owed Washington Belt if Washington Belt forbore enforcing payment from Active within a 1–year period. The court found Washington Belt's forbearance was sufficient consideration for Sparling's promise and further found that Washington Belt had forborne taking a judgment in reliance on Sparling's promise for a period of over 1 year. Additionally, the court found the Sparlings were estopped from defending on the basis of the statute of frauds, and that the promise was not barred by the statute of frauds. The trial court found that Washington Belt was not required to file a lien against the school district contract performance or retainage bonds[2] to mitigate any damages, but retained its right to sue Active and the Sparlings. This appeal followed.

The Sparlings challenge the trial court's finding that an oral contract existed between the Sparlings and Washington Belt in which the Sparlings personally guaranteed the debt of Active. Normally, findings of fact will be upheld

---

[2]The materials supplied to Active by Washington Belt were used in a public contract with and for the Seattle School District.

on appeal so long as they are supported by substantial evidence. *Nichols Hills Bank v. McCool,* 104 Wn.2d 78, 82, 701 P.2d 1114 (1985). When, as here, the trial court has weighed the evidence, this court's review is limited to determining whether the trial court's findings are supported by substantial evidence and, if so, whether the findings, in turn, support the conclusions of law and the judgment. *Holland v. Boeing Co.,* 90 Wn.2d 384, 390, 583 P.2d 621 (1978); *Miller v. Badgley,* 51 Wn. App. 285, 290, 753 P.2d 530, *review denied,* 111 Wn.2d 1007 (1988). Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the stated premise. *State v. Thetford,* 109 Wn.2d 392, 396, 745 P.2d 496 (1987); *Ridgeview Properties v. Starbuck,* 96 Wn.2d 716, 719, 638 P.2d 1231 (1982). Even where the evidence is conflicting, this court need only determine whether the evidence most favorable to Washington Belt supports the challenged findings. *See Thomas v. Ruddell Lease–Sales, Inc.,* 43 Wn. App. 208, 212, 716 P.2d 911 (1986).

The testimony of Washington Belt's controller, Marcelynas, corroborated by Urpman, that Sparling indicated his willingness to personally guarantee the debt of Active in exchange for forbearance from taking a judgment against Active is substantial evidence supporting the trial court's finding. Although there was conflicting testimony, the trial court weighed the evidence presented and found, as it was entitled to do, that Sparling guaranteed the debt of Active. We will not overturn this decision.

 The trial court concluded that Sparling could not use the statute of frauds as a defense to the enforcement of his promise because Washington Belt relied on Sparling's promise to its detriment. The court cited *In re Estate of Nelson,* 85 Wn.2d 602, 537 P.2d 765 (1975), for the proposition:

> A party who promises, implicitly or explicitly, to make a memorandum of a contract in order to satisfy the statute of frauds, and then breaks that promise, is estopped to interpose

the statute as a defense to the enforcement of the contract by another who relied on it to his detriment.

(Citations omitted.) *Nelson,* at 610–11. The finding is supported by substantial evidence.

Even if Washington Belt did not rely on the promise to its detriment, and even if that finding was not supported by substantial evidence, when analyzed, the statute of frauds does not apply in this case. The statute of frauds, RCW 19.36.010, provides:

> **Contracts, etc., void unless in writing.** In the following cases, specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: . . . (2) Every special promise to answer for the debt, default, or misdoings of another person; . . .

■ Sparling's promise was an oral guaranty to answer for the debt of another—Active. At a quick glance, it appears the case would fall within the statute. However, in determining whether a promise or guaranty falls within the statute, courts distinguish between collateral and original promises. If the promise is collateral, it falls within the statute of frauds; if the promise is an original promise, the statute does not apply. *Stowell Lumber Corp. v. Wyman,* 19 Wn.2d 487, 143 P.2d 457 (1943); *Morrison–Knudsen Co. v. Hite Crane & Rigging, Inc.,* 36 Wn. App. 860, 863, 678 P.2d 346, *review denied,* 101 Wn.2d 1020 (1984). A promise is considered original when the promisor receives some consideration or benefit from the promise. *McKay v. Northern Bank & Trust Co.,* 69 Wash. 186, 124 P. 372 (1912); *Morrison–Knudsen,* at 863. Detriment to the promisee is not considered adequate. *Lloyd Co. v. Wyman,* 16 Wn.2d 621, 134 P.2d 459 (1943); *Morrison–Knudsen,* at 863. There are cases which appear to refer to this as the "leading or primary purpose doctrine."

> However, this court has recognized and followed the very widely accepted doctrine that, where the leading purpose of the promisor is, not to aid the third person in getting credit, but, to

secure a benefit for himself, he will be considered a debtor himself, rather than a surety and the statute will not apply.

*R.H. Freitag Mfg. Co. v. Boeing Airplane Co.,* 55 Wn.2d 334, 342, 347 P.2d 1074 (1959); *see also Morrison–Knudsen,* at 863–64. If the leading object is to benefit the promisor, it does not matter if the effect of the promise is to pay the debt of another. *Burns v. Bradford–Kennedy Lumber Co.,* 61 Wash. 276, 280, 112 P. 359 (1910); *Morrison–Knudsen,* at 864.

The cases discuss three basic fact patterns which are set out in the *Morrison–Knudsen* case. The case at bar, like the *Morrison–Knudsen* case, is an example of a case where C (Active) contracts with B (Washington Belt) for goods. B performs. C becomes financially embarrassed or in arrears, and A (Sparling) promises to pay C's debt to B. A's promise falls within the statute of frauds unless A received some direct benefit. *See Smith v. Twohy,* 70 Wn.2d 721, 425 P.2d 12 (1967); *South Sound Nat'l Bank v. Meek,* 14 Wn. App. 577, 581, 544 P.2d 25 (1975). Thus, we must determine whether there is substantial evidence in the record to support the finding that the Sparlings (A, in the example above) received a direct benefit from the promise.

The trial court found the case of *South Sound Nat'l Bank* to be controlling. Because the Sparlings were the sole owners, operators, and shareholders of Active, any guaranty of Active's debt was a benefit to the owners of the closely held corporation because Washington Belt was forbearing on taking a judgment.

As stated in *South Sound Nat'l Bank,* at 583–84:

> It is apparent that any loan to a corporation in a sense benefits each individual shareholder. But in the equitable sense, the benefit remains indirect unless the personal interest of a shareholder in the corporation is such that the loan, induced by his promise, will serve as a substantial benefit to him personally. A closely held and managed corporation certainly has this potential. Accordingly, plaintiff is entitled to explore the relationship of these defendants to the corporation and the underlying circumstances surrounding the loans to the corporation.

When the trial court explored the relationship between the Sparlings and Active it concluded that because the Sparlings were the sole owners, managers and directors of Active, and basically were the corporation, a judgment would have been personally detrimental to the Sparlings. Therefore the guaranty in exchange for forbearance had a direct and personal benefit to the Sparlings and was an original promise. We agree.

As stated in *South Sound Nat'l Bank,* at 582–83:

> While the mere status of a shareholder may involve an insufficient direct benefit to establish that the promise is an original one, the additional status of defendants as owners of the entire corporate interest and managers and directors of its affairs, when coupled with the promises made to plaintiff to induce the loans, does, we think, establish prima facie that the promises may have been intended as original, rather than collateral. For under such circumstances it appears that the individuals, and not simply their corporate entity, will derive the primary benefit from the loans which were induced by the promises.

(Citation omitted.) Here, instead of inducing loans as in the *South Sound Nat'l Bank* case, Washington Belt's forbearance from taking a judgment for over 1 year in exchange for Sparling's promise was primarily a benefit to the Sparlings. This benefit to the Sparlings is especially evident when the promise is coupled with the fact that the Sparlings were the entire corporate interest and the managers and directors of the affairs of Active.

The Sparlings argue that even if there was a personal guaranty contract Washington Belt rescinded the contract by filing the action before the 1–year period of forbearance had expired. This issue is the Sparlings' way of trying to reargue the case to this court. The issue is one of whether there is substantial evidence to support the trial court's decision that the forbearance was a forbearance from taking a judgment for a period of a year, rather than from instituting any action at all. The trial court found, and there is substantial evidence to support the finding, that Washington Belt understood the forbearance to be one of forbearing from taking a judgment. This is what Washington Belt did.

After it filed the suit, and once it had an answer from Active and the Sparlings, Washington Belt took no action to collect on the debt until December of 1986. Although Washington Belt kept in touch with Sparling and even extended the period in which it was forbearing, Washington Belt waited until December of 1986 to proceed further.

The Sparlings claim that because Washington Belt instituted any action at all, *i.e.*, filed the suit, within a couple months of the "promise", it rescinded the contract and chose an alternate remedy. The Sparlings base this argument on *Bremerton Cent. Lions Club, Inc. v. Manke Lumber Co.*, 25 Wn. App. 1, 5, 604 P.2d 1325 (1979), *review denied*, 93 Wn.2d 1016 (1980). The three requirements for binding a party to an election of remedies were set forth in that case (citing *Lange v. Woodway*, 79 Wn.2d 45, 483 P.2d 116 (1971)). However, the Sparlings' argument is incorrect because the court found the agreement to be forbearing from taking a *judgment,* not forbearing from taking any action at all. As stated above, findings of fact will be upheld on appeal so long as they are supported by substantial evidence. *Nichols Hills Bank,* at 82. There is substantial evidence in the record to support the finding of the trial court.

Finally, the Sparlings contend that because Washington Belt did not file a lien or seek payment from the performance or retainage percentage bonds, it did not mitigate its damages as required by Washington law. We do not agree.

> "While it is economically desirable that personal injuries and business losses be avoided or minimized as far as possible by persons against whom wrongs have been committed, yet we must not in the application of the present doctrine lose sight of the fact that it is always a conceded wrongdoer who seeks its protection. Obviously, there must be strict limits to the doctrine. A wide latitude of discretion must be allowed to the person who by another's wrong has been forced into a predicament where he is faced with a probability of injury or loss. Only the conduct of a reasonable man is required of him. *If a choice of two reasonable courses*

*presents itself, the person whose wrong forced the choice cannot complain that one rather than the other is chosen."*

*Kubista v. Romaine,* 14 Wn. App. 58, 64, 538 P.2d 812 (1975) (quoting *Hogland v. Klein,* 49 Wn.2d 216, 221, 298 P.2d 1099 (1956), citing C. McCormick, *Damages* § 35, at 133 (1935)), *aff'd,* 87 Wn.2d 62, 549 P.2d 491 (1976).

One of Washington Belt's remedies was to sue on the open account and the oral guaranty contract. It was given assurances that it would be paid. Because it chose this course of action, Washington Belt cannot be penalized for deciding not to look to the performance bond or retainage percentage for payment.

The decision of the trial court is affirmed.

GROSSE, A.C.J., and PEKELIS, J., concur.

Reconsideration denied September 27, 1989.

Review denied at 113 Wn.2d 1035 (1990).